48 So.2d 574

**SCHWABACHER v. HERRING et al.**

**6 Div. 891.**

Court of Appeals of Alabama.

Oct. 3, 1950.

Rehearing Denied Oct. 31, 1950.

Lipscomb & Brobston, of Bessemer, for appellees.

S. P. Keith, Jr., of Birmingham, for appellant.

HARWOOD, Judge.

This is an appeal from separate verdicts and judgments in favor of the plaintiffs below in a suit for malicious prosecution. Each plaintiff was awarded damages in the amount of $250.00.

The defendant's respective motions for new trials being overruled, he perfected his appeals to this court.

By stipulation the cases were heard together, and it was agreed that one transcript be sufficient upon appeal.

Separate pleadings were filed in each case. These pleadings are identical, except for names, and will hereinafter be referred to in the singular, though our conclusions are equally applicable to each respective case.

The complaint alleges that the appellant maliciously and without probable cause, for the purpose of damaging the appellee, procured a complaint to be filed against him in the Bessemer Civil and Misdemeanors Court of Bessemer, Jefferson County, Alabama, on the 19th day of July,

1948, and that the defendant (appellant here) wrongfully, maliciously and without probable cause procured the issuance of process against the plaintiff (appellee here) requiring him to answer the complaint, and maliciously and without probable cause and with intent to injure him, procured an attorney, or attorneys, to file the complaint against him, well knowing that he had no cause of action against the plaintiff (appellee); that in said complaint it was alleged falsely, wrongfully, maliciously, and without probable cause, among other things, that plaintiff (appellee) unlawfully retained possession of certain premises in Bessemer. That the purpose of your defendant (appellant) in procuring the filing of said suit against the appellee, and in the prosecution thereof, was to turn appellee out of his home that he maintained for himself and family, and to damage, harass, humiliate, disturb, annoy and trouble him. That plaintiff (appellee) was required to appear before said court, at Bessemer, Jefferson County, Alabama, and to answer and make defense against said complaint in said court. That said cause was tried in said court on to-wit: the 4th day of August, 1948; that on said date said cause was duly submitted to the Judge of said court, who forthwith and on said date rendered judgment in said cause in favor of appellee here, and held that defendant below, Ben Schwabacher, as plaintiff in said suit, was not entitled to a judgment in said cause. That said action at law against the appellee here was on said date judicially investigated and said prosecution ended, and the appellee here discharged. That in defending against said pretended cause of action so maliciously begun and prosecuted appellee here was compelled to, and did employ counsel, and that the services rendered by his attorney therein was of reasonable value, to-wit: Fifty Dollars ($50.00), which sum is here specially claimed as damages in this cause. And plaintiff, (appellee here), avers that because of the prosecution of said action at law against him, as aforesaid, he thereby suffered great mental pain and anguish, suffered great loss of time and expended sums of money other than his attorneys fee in making defense to said malicious prosecution, and that he has been damaged in the sum aforesaid. Plaintiff also claims punitive damages of defendant.

Demurrers and amended demurrers were filed to the complaint and overruled.

Thereafter the pleading was in short by consent.

The complaint alleges: 1. a judicial proceeding; 2. instigation by the defendant; 3. want of probable cause; 4. malice; 5. termination of the prosecution favorable to the now plaintiff; and 6. damages.

■ The demurrers were therefore properly overruled. United States Fidelity & Guaranty Co. v. Miller, 218 Ala. 158, 117 So. 668; Wells Co. v. Lane, 22 Ala. App. 269, 115 So. 74, certiorari denied 217 Ala. 10, 115 So. 77; Birmingham Bottling Co. v. Morris, 193 Ala. 627, 69 So. 85; Askin & Marine Co. v. Logan, 24 Ala. App. 13, 130 So. 768, certiorari denied 222 Ala. 52, 130 So. 770.

All of the plaintiffs below were former tenants of the defendant in the Beverly Court Apartments in Bessemer, Alabama, and all had properly paid the rents due thereon. These apartments were registered with the Office of Price Administration, and under the provisions of federal rent control law. Sections 206 (a), 209 (a) and 209 (a) (4) of Public Law 464, 80th Congress, approved 30 March 1948, 50 U.S. C.A.Appendix, §§ 1896, 1899, in force at the time the acts around which this suit revolves, provides as follows:

"Sec. 206 (a)  It shall be unlawful for any person to offer, solicit, demand, accept, or receive any rent for the use or occupancy of any controlled housing accommodations in excess of the maximum rent prescribed under section 204 or otherwise to do or omit to do any act in violation of any provision of this title. * * *

"Sec. 209 (a)  No action or proceeding to recover possession of any controlled housing accommodations with respect to which a maximum rent is in effect under this title shall be maintainable by any landlord against any tenant in any court, notwithstanding the fact that the tenant has

no lease or that his lease has expired, so long as the tenant continues to pay the rent to which the landlord is entitled unless—

"Sec. 209 (a) (4) The landlord seeks in good faith to recover possession of such housing accommodations (A) for the immediate purpose of substantially altering or remodeling the same for continued use as housing accommodations, or for the immediate purpose of conversion into additional housing accommodations, and the altering, remodeling, or conversion cannot practically be done with the tenant in occupancy, and the landlord has obtained such approval as may be required by Federal, State, or local law for the alterations, remodeling, or any conversion planned, or (B) for the immediate purpose of demolishing such housing accommodations".

Beginning in January 1948, and continuing until shortly before suits for dispossession were instituted, the defendant served on the plaintiffs a series of notices to vacate their respective apartments. The majority of which notices stated that the demand for the premises was "on account of substantially altering and remodeling" the premises.

Upon the failure of the plaintiffs to vacate, the defendant on 9 July 1948, instituted respective unlawful detainer suits against them in the Bessemer Civil and Misdemeanor Court.

Upon trial of the unlawful detainer suits in the above court on 4 August 1948 Mr. Schwabacher took a nonsuit in each case, after the trial judge had indicated his doubts as to the sufficiency of a building agreement between Mr. Hallmark, a contractor, and Mr. Schwabacher relative to material work on the apartments looking to substantial alterations.

Thereafter, new notices to vacate were given by Schwabacher to the plaintiffs below, and about a month later unlawful detainer suits were again filed, which resulted in judgments by agreements against the tenants, with the understanding they would vacate the premises by a certain date.

It was the theory of the plaintiffs' cases that the allegations by the defendant that he desired possession of the apartments in order to substantially alter and remodel them was but a subterfuge designed to cloak his real desire to obtain possession, and after doing "a little painting and papering," re-rent same at substantially higher rents, and that no real effort was made toward any substantial alterations until after the termination of the first unlawful detainer suits.

George Crim testified that Mr. Schwabacher had attempted in January 1948 to get him to sign a new lease on his apartment at a 15% increase in rent, and upon his refusal to do so had told him that he would be evicted, and by doing a little painting and papering he (Schwabacher) could get $45.00 rent for Crime's $25.00 apartment.

Testimony of similar tenor was given by plaintiffs Roy and Gibbs.

The plaintiffs also introduced evidence tending to show that prior to the termination of the first unlawful detainer suits no substantial remodelling of the premises was done, but only painting and papering and minor repairs. The evidence is in conflict as to the amount of materials brought to the premises, and the type of work done during this period of time.

There was also testimony to the effect that Mrs. E. H. Mohr had never occupied an apartment in the Beverly Court Apartments.

The defense was directed toward showing that for many months prior to issuing the notices to vacate the defendant had bona fide planned to alter his apartment building.

Mr. Schwabacher testified that he first talked with Mr. Jack Smith, an architect, relative to these alterations in January 1948, and had further conferences with him several times thereafter, and that Mr. Smith began working on the plans back in the winter of 1947, making sketches, etc. Numerous sketches were made, and work on this substantial alteration was begun in May, 1948. It appears however that

these sketches were pencil drawings made by Mr. Schwabacher or his foreman.

Mr. Schwabacher further testified that he consulted Mr. Edward Saunders, a practicing attorney in Bessemer, relative to proceedings to legally secure possession of the premises; that he told Mr. Saunders the kind of alterations he intended to make, and that he had already secured a permit for the alterations; he further testified that he told Mr. Saunders he had a contract with Mr. Hallmark only to do the painting, and some repairs on screens and doors.

In this connection it should be noted that Mr. Saunders testified that his advice to Mr. Schwabacher was based on information supplied him by Mr. Schwabacher to the effect that the apartments were to be remodelled, and additions made, though he did not remember the minute details; and that a contract had already been made with Mr. Hallmark for this purpose, and Hallmark had secured a permit for the work.

Mr. Saunders checked with the City of Bessemer and found the permits had been issued, one for $10,000.00, issued on 25 May 1948, and one for $500.00, the $500.00 permit being for work already done on a basement apartment.

It should further be noted that Mr. Hallmark testified that when he secured the $10,000.00 permit on 25 May 1948, it was secured for painting and papering, and no plans had been presented to him, or made by him, for any alterations.

Mr. Hallmark further testified that he and Mr. Schwabacher made frequent trips to the apartment and would walk around and make sketches of contemplated alterations, but these "were disregarded before we even left there."

On one occasion he, Mr. Jack Smith the architect, and Mr. Schwabacher visited the apartment. Mr. Smith told Mr. Schwabacher he could not begin any plans until a survey of the premises was made, in order to determine the exact boundaries thereof.

At Mr. Schwabacher's instructions Mr. Hallmark had this survey made about a week later. This survey was received in evidence, and is dated 9 June 1948. Mr. Hallmark further testified that to his knowledge no definite plans for altering the apartments had been made prior to this survey.

Appellant's counsel argues that the defendant below acted only after the advice of counsel honestly sought and honestly acted upon, and was thus exonerated from any liability in this suit.

■ Advice of counsel is not a defense to an action for malicious prosecution unless all the facts bearing on the guilt of the accused, known or ascertainable by reasonable inquiry, are fully and fairly disclosed to the attorney whose advice is sought. Fowlkes v. Lewis, 10 Ala.App. 543, 65 So. 724.

The testimony of Mr. Saunders, a highly reputable attorney, was to the effect that Mr. Schwabacher informed him that a contract for remodelling and altering the apartments had already been made with Mr. Hallmark. Mr. Hallmark testified that no such contract had been made at the time.

This testimony, if believed by the jury under the required rule, would deprive the appellant of the immunity he claims. Kemp v. York, 16 Ala.App. 675, 81 So. 195, certiorari denied 202 Ala. 425, 80 So. 809.

It is further contended by appellant's counsel that the lower court erred in submitting to the jury the question of the existence of probable cause.

A complete answer to this contention, in view of the contradictory evidence submitted in this case, is found in Key v. Dozier, 252 Ala. 631, 42 So.2d 254, 256, where Stakely, J., wrote as follows: "It is contended that the question of probable cause is one of law, which the court must decide. We agree that if the facts on the issue of probable cause are not in dispute. whether such facts amount to probable cause is a question of law for the court.— Brackin v. Reynolds, 239 Ala. 419, 194 So. 876. But it is equally true that if the facts or any necessary particular fact on the issue of probable cause is in dispute, then there must be a submission to the jury to

find the facts.—Glidden Co. v. Laney, 234 Ala. 475, 175 So. 296; Molton Realty Co. v. Murchison, 212 Ala. 561, 103 So. 651; Green v. Norton, 233 Ala. 489, 172 So. 634; McMullen v. Daniel, 229 Ala. 194, 155 So. 687. And 'as said in McLeod v. McLeod, 75 Ala. 483, 486: "The question in such cases is not whether the accused was in fact guilty, but whether the prosecutor, acting in good faith, and on the reasonable appearance of things, entertained the reasonable belief of his guilt."' Torian v. Ashford, 216 Ala. 85, 112 So. 418, 420."

 In view of that part of the evidence tending to show that appellant did not have any real or definite plans for substantial and material alterations or remodelling of the apartments at the time he instituted the unlawful detainer suits against the appellees, or even at the time he took a nonsuit in such proceedings, though such renovations were asserted in the notices to vacate as being the reason for demanding possession of the premises, and indeed were the only probable grounds, if valid, by which appellant could have repossessed the premises, it is our conclusion that the court properly submitted the question of probable cause, or lack thereof to the jury, and that the jury was justified in inferring that such element was absent and that malice was present. The other elements essential to support the verdict and judgment rendered by the court are readily inferable from the evidence. The lower court therefore did not err in refusing appellant's charges which were affirmative in nature, and in denying appellant's motions for new trials made in each respective case.

Each plaintiff below was awarded damages of $250.00. The damages permitted in cases of this nature are both compensatory and exemplary. The imposition of exemplary damages, punitive in nature, must be left to the discretion of the jury, whose judgment will not be interfered with, unless the amounts awarded evidence passion, prejudice, or improper motive. The trial court refused to set aside the verdict on these asserted grounds. We find no basis for disturbing it. Key

v. Dozier, supra. A number of rulings by the court relative to the admission or rejection of evidence are set forth verbatim in appellant's brief, and characterized in general terms as being erroneous. No authorities are cited in support of these general assertions of error. While not intimating that any of these assertions are meritorious, we refrain from consideration of them because not in proper form to invite our review. Supreme Court Rule No. 10, Code 1940, Tit. 7 Appendix; Great Atlantic & Pacific Tea Co. v. Smalley, 26 Ala.App. 176, 156 So. 639; Northington v. Priddy et al., 26 Ala.App. 476, 162 So. 408; Christ v. Spizman, 33 Ala.App. 586, 35 So.2d 568.

Other points are argued in appellant's brief. In our opinion they are without merit, and no discussion is indicated.

Affirmed.