PER CURIAM.
The relevant facts and the resolution at trial are set out in the following “final judgment” entered by Judge Marvin Cher-ner:
“FINAL JUDGMENT
“This case has now been submitted for decision by this Court following an eviden-tiary hearing on the issues presented.
“Charles Earl Peoples died on June 20, 1986. At the time of his death, he was an employee of the City of Birmingham and as such employee was provided insurance coverage under a group insurance policy issued by Liberty National Life Insurance Company.
“On September 12, 1979, Charles Earl Peoples executed a form entitled ‘Enrollment for City of Birmingham Group Life Insurance Issued by Liberty National Life Insurance Company,’ for the purpose of designating his father, Woodrow Peoples, as the beneficiary of the proceeds payable under the group life insurance policy in the event of his death.
“Charles Peoples was bom on November 29, 1951. It became apparent when Charles had attained the age of thirteen or fourteen that Charles’s health was not *1289 good. He suffered primarily from diabetes and from a number of other conditions brought on by diabetes. As he grew older, his health continued to deteriorate. By November, 1980, when Charles was almost 29 years of age, he suffered from diabetes, from mellitus problems with his kidneys, and from peripheral arterial insufficiency problems with his feet. He also had diabetic retinosity, or poor vision, caused by his diabetic condition.
“On November 12, 1980, Charles was married to Antoinette Peoples. The marriage ceremony took place in the hospital because Charles was hospitalized at the time.
“As a result of Charles’s death, the face amount of $36,000.00 plus interest from the date of death became payable to the beneficiary designated by Charles to receive the same.
“Because Charles’s father, Woodrow Peoples, Sr., made claim as the beneficiary and Charles’s wife, Antoinette, also made claim, Liberty National filed a bill of inter-pleader in this case and has paid the sum of $36,230.00 representing principal in the amount of $36,000.00, together with interest earned on the same, to the Register of this Court.
“Having fully discharged its obligation under the insurance contract, Liberty National by order rendered by this Court on October 3, 1986, was dismissed as plaintiff in this case, and the Register was directed to restyle this case....
“Woodrow Peoples now makes claim to the amount of the insurance benefits as the duly designated beneficiary under the form executed by Charles Peoples on September 12, 1979.
“Antoinette Peoples also makes claim to the insurance proceeds, saying that Charles during his lifetime effected by parol a change of the beneficiary ... under the policy and designated her as such beneficiary.
“The issue presented then is whether Charles Earl Peoples did effect a parol change of the designation of beneficiary of the proceeds payable under his group life insurance contract with Liberty National by designating Antoinette Peoples as beneficiary.
“In support of her position that Charles did make such designation, Antoinette Peoples has submitted in evidence copies of three forms, collectively identified as Defendant’s Exhibit 3, at least one of which relates to health or medical insurance. This one is an application to Blue Cross and Blue Shield of Alabama dated December 4, 1980. Another relates to the application and names Antoinette Peoples as the wife of Charles Peoples.
“Still another form is labeled, ‘City of Birmingham Personnel Data Sheet.’ This form was filled out by hand printed letters and numbers indicating the Social Security number, name, and address of Charles Peoples. On line 27, under the printed letters, ‘Life Insurance Beneficiary,’ the name of Antoinette D. Peoples has been printed by hand. However, no signature appears on this document.
“All three forms were in the file of the payroll coordinator employed by the City of Birmingham and [were] not a part of Charles Earl Peoples’s personnel file.
“Joni Perley, employee benefits manager employed by the City of Birmingham, testified that in order for any employee of the City of Birmingham to designate a person as beneficiary of his group insurance policy, it is necessary that that person sign an enrollment card similar to the one executed by Charles Peoples designating his father, Woodrow Peoples, as such beneficiary. Joni Perley further testified that the form styled ‘Personnel Data Sheet’ was customarily completed and signed by someone in the payroll coordinator’s office as a result of an interview with the employee named in the sheet. She testified that the Personnel Data Sheet was usually discarded after having first been used to place the information recorded on the sheet in the computer. The designation of the life insurance beneficiary would also be recorded in the computer but only if the Personnel Data Sheet was accompanied by an enrollment card designating such beneficiary which had been properly signed by the employee and *1290 dated. Because no such enrollment card designating Antoinette Peoples had ever been signed by Charles Earl Peoples, the records in her office indicated that the father, Woodrow Peoples, was entitled to the insurance proceeds payable on Charles Peoples’s death.
“In support of her position that Charles Peoples by parol effected a change of the beneficiary of the insurance benefits, Antoinette Peoples herself testified that Charles Peoples [had] requested the necessary forms to effect the change and [that] these forms were on the desk of a supervisor in the computer room on December 4, 1980, when he came to work that day. She testified that all of the handwritten words on all three forms identified as Defendant’s Exhibit 3 were in her handwriting and that she completed these forms at the request of and under the direction of Charles Peoples. She also testified that she had herself signed Charles Peoples’s name on the application to Blue Cross and Blue Shield of Alabama at the direction of Charles Peoples. She said that Charles Peoples at the time could not see to write to fill out the form because it was on white background and that he told her what to write.
“However, she only signed his signature to the application for Blue Cross and Blue Shield insurance and left the other document, i.e., the Personnel Data Sheet, for Charles to sign.
“Antoinette’s testimony in court that she herself filled out the information on the Personnel Data Sheet, as well as the information on the other forms, is inconsistent with the statement made by her by affidavit earlier on November 22, 1986. In that affidavit, Antoinette Peoples said that Charles filled out the forms relating to his insurance and she filled out at his request a change of beneficiary form. Antoinette testified:
“‘Subsequent to that marriage Charles filled out for delivery changes in his group medical policy and his group life insurance to effect his change of circumstances. The changes in the group medical policy added me and my three daughters as added beneficiaries; and the change in his group life insurance added me as the named beneficiary. At the time these changes were being effected, Charles was having problems with his vision and so he requested that I fill out the change in beneficiary form. The form was filled out and Charles returned it to his office where it was placed in his employee file.’
“The form which Antoinette filled out was a Personnel Data Sheet used by the computer operator to insert information in the computer. The enrollment card form normally used to effect a change in the name of the beneficiary of Charles’s group life insurance benefits for city employees was never filled out or signed.
“Counsel for Antoinette Peoples also argues that Charles Peoples effected a change of the beneficiary of the benefits of his group life insurance policy by parol; i.e., by stating his intention that the same be changed.
“Here, counsel for Antoinette Peoples relies on the decision of the Supreme Court of Alabama in Norton v. Norton, 280 Ala. 307, 193 So.2d 750 (1966). In that case, O.K. Norton was divorced from his first wife, Barbara, and then married Annette. The person designated as the beneficiary of his group insurance by Norton as an employee of Republic Steel was his former wife, Barbara. Norton never signed the form customarily used to effect a change in the designation of his beneficiary. The circuit court found, however, that he effected by parol a change of the beneficiary, relying on testimony that the insured had stated to others that Annette would receive the insurance proceeds from the group insurance policy if anything happened to him.
“The supreme court in that case rejected the argument that the insured failed to comply with the rules of the insurance company and the employer in effecting a change of beneficiary. The supreme court held that the limitations as to changes in beneficiary were solely for the benefit of the insurer and that the insurer by filing the interpleader waived those limitations. In the present case, Liberty National also filed an interpleader and therefore waived *1291 any requirement that the change of beneficiary be effected in accordance with the provisions of its insurance contract.
“The issue then is whether Charles Peoples did effect an oral change of beneficiary of his group insurance contract and made his wife, Antoinette, the beneficiary. In support of her contention that Charles did name her beneficiary, counsel for Antoinette submitted the testimony of Dorothy Sims Orr, as a tax preparer and accountant. Dorothy Orr testified that she prepared income tax returns for Charles and Antoinette Peoples and also asked Charles Peoples about purchasing insurance. She testified that Charles Peoples told her that he, Charles Peoples, had enough insurance with the City to cover his wife and children if anything happened to him. This conversation occurred sometime after February 1986, according to Dorothy Orr.
“Another witness, Charles Miller, testified that he is an insurance salesman. He attempted to sell insurance to Charles Peoples during the latter part of 1985. Miller testified that Charles Peoples told him that he, Charles Peoples, didn’t have a need for more insurance because he had protection for his family.
“On the other hand, evidence was presented that Charles Peoples worked as a computer operator and had high intelligence. He had filled out and executed the appropriate form on September 12, 1979, designating his father as the beneficiary of the insurance benefits. In December 1980, Charles Peoples was still functioning as an employee and doing the work required of him as a computer operator for the City of Birmingham. It would have been an easy matter for Charles Peoples to [obtain] the appropriate enrollment card designating Antoinette Peoples as the beneficiary of his insurance had he desired to do so. No such form was signed by him. It has not been satisfactorily explained why Charles Peoples could not have signed such form had he desired to do so.
“Evidence was presented that the relationship between Charles Peoples and his wife, Antoinette Peoples, was a stormy one. According to Woodrow Peoples, Jr., the brother of Charles Peoples, Antoinette Peoples attempted to strike Charles Peoples with a hammer on one occasion. According to the father, Woodrow Peoples, Antoinette Peoples on another occasion used a hammer to break out the windshield of Charles Peoples’s automobile. Antoinette herself testified that she threw something at Charles’s automobile but did not break the window.
“On another occasion, Antoinette Peoples became angry with Charles. She caused him to leave the home and then took all of his belongings and threw them out in the yard.
“Evidence was also presented that Charles Peoples resented the fact that Antoinette refused to convey to him any interest in the house owned by her and in which both of them lived. To explain her refusal to do so, Antoinette testified that she had taken a real estate course, and [that] it was her understanding that Charles Peoples became entitled to an interest in the house as a result of their marriage and without the necessity of her having to execute a deed to convey any interest in the house to him.
“The documents found in the file of the payroll coordinator were not considered sufficient by her or by the employee benefits manager to effect a change of beneficiary under Woodrow Peoples’s group insurance. Furthermore, no satisfactory explanation has been afforded as to how the payroll coordinator came to have the documents identified as Defendant’s Exhibit 3 in her file.
“Having carefully considered the evidence and the arguments of counsel, this Court finds from the evidence that Charles Peoples did not during his lifetime effect by parol a change of the beneficiary of the benefits payable under his group insurance contract with the City of Birmingham. This Court further finds that Charles Peoples did on September 12, 1979, designate his father, Woodrow Peoples, as the beneficiary of such insurance contract.
“Accordingly, judgment is hereby rendered in favor of Woodrow Peoples with *1292 respect to the issues presented in this case...
The judgment is supported by the evidence. We have been shown no error in Judge Cherner’s factual findings or his application of the law to the facts. We affirm.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, SHORES and ADAMS, JJ., concur.