ROBERTSON, Presiding Judge.
This is a malicious prosecution case. Donnie Sterling Harris was arrested on *1087 November 16, 1988, for the theft of a 1963 Buick Riviera (Buick) owned by Lonnie Thompson. The formal charge against Harris at that time was theft of property in the first degree. The charge against Harris was eventually dropped.
The record reflects that the following series of events ultimately resulted in the arrest of Harris: On July 27, 1988, Thompson noticed that the Buick was missing. On the same day, Thompson called the police to report the theft of the Buick. Approximately two weeks after Thompson reported the theft, Ralph Dorsey, a witness to the incident, approached Thompson and gave him the Alabama tag number of the pickup-size wrecker that Dorsey said he observed towing away the Buick. According to Dorsey, he did not write the license tag number down at the time he saw the wrecker towing the Buick, but wrote the number down several days later when he saw the wrecker again. The wrecker bearing the tag with the number provided by Dorsey was registered to Abe’s Motor Services (Abe’s). The owner of Abe’s, Curtis Stapleton, told Officer Poole, the investigating officer, that he sold the wrecker to John Phillips, the owner of ABC Auto Salvage (ABC). Phillips told Stapleton that he sold the wrecker to Harris, one of his employees.
According to Officer Poole, between September 2, 1988, and November 8, 1988, Thompson called several times and requested that the police sign a warrant on Harris and put him in jail. On all of these occasions Officer Poole said he told Thompson that he was not through with his investigation and needed to talk to Harris before any warrant was signed. On November 8, 1988, Officer Poole said Thompson went to his superiors in the police department, and he was removed from the case on that day. The case was then reassigned to another officer. The warrant on Harris was signed on November 8, 1988. Thompson maintains that because Officer Poole said the only way to get Harris to confess was to arrest him, Thompson signed an affidavit that implicated Harris in the theft of the Buick. Based on this affidavit, an arrest warrant was issued, and Harris was arrested on November 16, 1988.
The day Harris was arrested, Officer Poole received a telephone call from Phillips. Phillips told Officer Poole that Harris had been arrested on charges stemming from the theft of the Buick and that Harris had nothing to do with the theft of the vehicle. Phillips said that the Buick was at ABC and that his stepson, David Blackburn, brought the Buick to his lot sometime several months before.
Two days after Phillips contacted Officer Poole, Blackburn called Officer Poole about the Buick. Blackburn said that sometime in July 1988, he was using his father’s wrecker. While waiting at a stop sign, he was approached by an unknown black male who asked him if he bought old vehicles. Blackburn said that he did, and the black male took him to a house where Blackburn bought a 1963 Buick Riviera. The black male gave him a bill of sale for the vehicle and signed it Joe Johnson.
Harris went to court on two occasions as the result of his arrest. The first involved his initial appearance on December 1, 1988, and the second was on January 18, 1989, when the district attorney nol prossed the charge against Harris.
Harris subsequently filed a complaint against Thompson for malicious prosecution. Later, Harris amended his complaint and added the City of Mobile and Officer Poole. This amended complaint claimed that all three parties violated the constitutional rights of Harris under 42 U.S.C. § 1983. This case was then removed to federal district court. Harris dismissed the City of Mobile and Officer Poole. The federal district court granted summary judgment against Harris regarding the federal claims and remanded the case to the state circuit court on the malicious prosecution claim. The trial court conducted a non-jury ore tenus proceeding and entered a final judgment in favor of Harris in the amount of $6,300 plus costs. Thompson appeals.
The dispositive issue in this case is whether the trial court erred when it found that the underlying criminal proceedings *1088 against Harris were initiated maliciously and without probable cause.
The following criteria must be satisfied in order for a plaintiff to succeed in a malicious prosecution case: “(1) the institution of a judicial proceeding by the defendant; (2) lack of probable cause; (3) malice in instituting the proceeding; (4) termination of the proceeding in the plaintiffs favor; and (5) injury or damage to the plaintiff as a result of the proceeding.” Dardess v. Blasingame, 585 So.2d 8, 10 (Ala.1991). (Citation omitted.) If Harris failed to satisfy any one of the aforementioned elements, it would be fatal to his action for malicious prosecution.
In this case, Thompson specifically contested the trial court’s findings regarding the second and third elements of this test.
The second element involved the determination of whether the charges were brought with probable cause. In Pearson v. Delchamps, Inc., 578 So.2d 1086 (Ala.1991), our supreme court held that “[pjrobable cause exists when the facts ... would lead a man of ordinary caution and prudence to believe or to entertain an honest or strong suspicion that the person arrested is guilty.” Pearson at 1088. (Citation omitted.) Our supreme court defined the scope of inquiry in deciding whether probable cause was present as follows: “The question is not whether the malicious prosecution plaintiff was guilty of the thing charged, but whether the malicious prosecution defendant acted in good faith on the appearance of things.” Eidson v. Olin Corp., 527 So.2d 1283, 1285 (Ala.1988). (Citation omitted.)
In this case, Thompson maintained that his actions fell within the traditional parameters of probable cause. However, the particular facts of this case indicate that Thompson did not have probable cause when he signed the affidavit against Harris. First, the record reflects that the charges against Harris were nol prossed. Our supreme court held in Chatman v. Pizitz, Inc., 429 So.2d 969, 972 (Ala.1983), that “[a plaintiff] can make out a prima facie case of a lack of probable cause by showing that the criminal proceedings instituted against [him] by [the defendant] were nol prossed....” Since the charges against Harris were nol prossed, Harris made a prima facie showing of lack of probable cause; although Thompson could rebut this presumption by showing that he acted in good faith. Thompson maintained that, since he based his decision to sign the affidavit on the assertions of Officer Poole, he acted in good faith. This court considered the existence of probable cause in reliance on the representations of a police officer in Harris v. Harris, 542 So.2d 284 (Ala.Civ.App.1989). In Harris, the defendant maintained that he executed the warrant based upon the advice given by the investigating officer; therefore, he insisted, he had probable cause to suspect the plaintiff of the crime charged. This court held that “[r]eliance upon the advice of counsel is a complete defense to an action for malicious prosecution. However, here, it appears that the defendant relied upon the advice of the investigating officer rather than the advice of counsel.” Harris at 287. (Citation omitted.) This court found that the defendant’s reliance on the investigating officer’s statements did not establish probable cause to sign an arrest warrant against the plaintiff. Harris. Therefore, we find that the trial court in this case properly determined that probable cause was not present when Thompson signed the affidavit implicating Harris in the theft of the Buick.
The third element involved whether the proceedings were instituted with malice. The record is devoid of any express malice directed by Thompson toward Harris. In the absence of express malice, in order for Harris to sustain his action for malicious prosecution, he must show that malice should be inferred from the actions of Thompson. This court previously defined malice in the context of malicious prosecution as follows:
“Malice, for purposes of a malicious prosecution action, may be inferred from want of probable cause. Malice may also be inferred from circumstances surrounding and attending prosecution. This is because malice is incapable of *1089 positive, direct proof and must out of necessity be rested on inferences and deductions from facts which are heard by the trier of fact.”
Thompson v. Kinney, 486 So.2d 442, 445 (Ala.Civ.App.1986). (Citations omitted.) In this case, we find that, since there was a lack of probable cause, the trial court did not err when it inferred that Thompson acted with malice.
Accordingly, the judgment of the trial court in favor of Harris is due to be affirmed.
AFFIRMED.
THIGPEN and RUSSELL, JJ., concur.