MOORE, Judge.
 

 Kenneth Ravenel appeals from a summary judgment entered by the Madison Circuit Court in favor of Frederick L. Burnett in Ravenel’s civil action alleging malicious prosecution against Burnett for charging Ravenel with criminal harassment. We reverse and remand.
 

 Facts
 

 The deposition testimony and affidavits submitted in support of or in opposition to the summary-judgment motion reflect the following. Burnett testified that, in late 2003 or early 2004, Ravenel’s wife, Shelly, asked Burnett, an independent business owner, to assist her with starting her own business. Burnett, who had known Shelly as a good friend of his wife’s for many years, agreed to act as her mentor. The two often communicated concerning the project, including by personal meetings, telephone calls, and e-mails. Although both Burnett and Shelly testified that they maintained a professional relationship, Ra-venel testified that he became convinced from their constant communication and the lack of any real progress regarding Shelly’s business that the two were having an extramarital affair. Ravenel testified that he told Shelly he believed her relationship with Burnett was inappropriate and detrimental to their three-year marriage.
 

 Burnett testified that, in January or February 2004, Ravenel unexpectedly appeared at Burnett’s office and requested that Burnett cease communications with his wife. Though insisting his relationship with Shelly was not improper, Burnett
 
 *594
 
 agreed to quit talking with her and telephoned Shelly that day to inform her of the situation. Burnett testified that Shelly was surprised that Ravenel had confronted Burnett and said that she would talk to Ravenel about the situation.
 

 Shelly testified that, in the spring of 2004, she agreed to go on a shopping trip to Atlanta with Lynette Fife, her friend and coworker. Fife testified that they arranged to meet at the parking lot of the post office in Gurley at 7:30 a.m. and to drive together to Atlanta in Fife’s automobile. Shelly informed Fife that she could not stay overnight in Atlanta because she did not want to further arouse Ravenel’s suspicion that she was having an affair with Burnett. The two spent the day together in Atlanta shopping and returned to the Gurley post office between 9:00 p.m. and 11:00 p.m. At no time did they meet any men or have any men in Fife’s automobile. No man met them in Gurley when they returned. Nevertheless, Ravenel testified that between 4:00 p.m. and 8:00 p.m. he observed Shelly sitting in an automobile with Burnett in the Gurley post-office parking lot for about 30 seconds before they drove off together. Burnett testified that he was in Philadelphia on the day in question. Shelly denied that she had been in an automobile with Burnett as Ravenel claimed.
 

 Shelly testified that, after arriving home that night, she unpacked her shopping bags and prepared for bed. Ravenel then sat on the edge of their bed and repeatedly stated, “I caught you.” Eventually, Ra-venel explained that he believed that she had spent the day with a man instead of going shopping. Shelly denied the accusation; she testified that Ravenel had simply become obsessed with his suspicion that she was having an affair with Burnett. According to Shelly, Ravenel kept her up all night badgering her and telling her he was going to church the next day and was going to tell the pastor and everyone who would listen that he had caught her in an affair. According to Ravenel, when he told her that he was going to tell the pastor, she replied, “What is he going to do?” Ravenel took her reply as an admission of the affair.
 

 Ravenel testified that he spoke with his pastor about the situation. Burnett testified that the pastor had held a meeting with him in which the pastor informed him that Ravenel had accused him of spending the day with Shelly in Atlanta as part of their affair and that Ravenel had requested that Burnett be kicked out of the church. The pastor also told Burnett that Ravenel said he “saw Burnett lying dead in a casket,” which Burnett perceived as a threat. Ravenel denied he ever threatened Burnett’s life. Burnett testified that following his meeting with the pastor he telephoned Shelly for the first time since his meeting with Ravenel.
 

 Burnett testified that, shortly after his conversation with the pastor, Ravenel attempted to start a fight with him in the church parking lot. Burnett testified that Ravenel approached him and “got in my face.” Valerie Britton testified that she witnessed the incident. According to Brit-ton, as she left the church service, she coincidentally met Burnett going in the same direction and they struck up a conversation. When they arrived at her automobile, they stopped to finish their talk. Ravenel was already sitting in his automobile just behind hers. Ravenel started talking angrily, then got out of his automobile and continued to talk in an upset and angry manner towards Burnett. Britton testified that she did not hear what Raven-el was saying but that his inappropriate conduct and behavior was such as to cause a person to be concerned for his or her safety. Burnett testified that another
 
 *595
 
 church member had intervened before the situation could escalate.
 

 Ravenel testified that Britton had lied about the incident. Ravenel said that he saw Britton and Burnett walking together toward the church but that he did not say anything directed toward Burnett. Raven-el testified that he was conversing with another church member about observing Burnett with his wife in the Gurley post-office parking lot. The other member indicated he did not know who Burnett was. Ravenel then saw Burnett and pointed him out, saying: “There he is right there; that’s the guy.” Ravenel testified that he did not know why Britton would lie about what happened.
 

 Burnett testified that the next day he contacted Shelly, who told him that Raven-el previously had placed a firearm in their automobile. Shelly testified that she had observed Ravenel place the gun in their automobile one morning before they left for church. Burnett testified that he did not see the gun during the confrontation in the parking lot. Burnett also testified that Shelly had told him that Ravenel had stated that he wanted to kill Burnett. Shelly testified that Ravenel said he was going to kill Burnett at some point before placing the gun in their automobile and that she felt concerned enough that she informed Burnett of the threat. Ravenel denied that he had placed a gun in his automobile or that he had ever threatened to kill Burnett. Ravenel could not explain why Shelly would lie about those events.
 

 Burnett testified that, after Shelly’s warnings, he started sitting in the back of the church where he could observe Raven-el during services. On October 10, 2004, Burnett was sitting in one of the back pews next to Bonnie Banks, a fellow church member. Ravenel was sitting closer to the front next to Shelly. Banks testified that during “fellowship time,” a point at which the church members greeted one another, Ravenel “popped up” out of his pew some distance away and hurriedly approached the area where she and Burnett were seated. Ravenel briefly shook Banks’s hand in passing and then approached Burnett. The two men then had a conversation, which Banks did not overhear. Banks testified that Burnett later left the church before the sermon started.
 

 Burnett testified that Ravenel had approached him and asked him to step outside so they could talk. Burnett declined the offer and told Ravenel to say whatever he needed to say. At that point, Ravenel told Burnett in vulgar terms to leave Shelly alone and that, if he did not, Ravenel would kill him. Burnett testified that he immediately informed an assistant pastor of the threat and that he and the pastor left the church together and did not return until they were sure Ravenel was gone. Shelly testified that she did not overhear the conversation between the two men, but, she said, Ravenel had stated to her in an angry and upset tone that he had spoken to Burnett, although he would not tell Shelly what he had said to Burnett. Ra-venel denied that he had threatened to kill Burnett; he testified that he merely told Burnett “[t]hat I felt that he needs to stop communicating to my wife because we were trying to get our relationship back on track, from her point of view.” Ravenel testified that he did not curse, scream, or talk to Burnett in an angry manner.
 

 On October 11, 2004, Burnett signed an Alabama Uniform Incident Offense Report. In that report, Burnett set out the substance of the early 2004 meeting between him and Ravenel; the accusation that he had taken Shelly to Atlanta; the perceived threat that Ravenel had made about Burnett to the pastor; the report that Ravenel was carrying a gun to church;
 
 *596
 
 a brief description of the altercation in the church parking lot; and his version of the October 10, 2004, confrontation.
 

 Four days later, on October 15, 2004, Burnett gave a statement to Will Culver, the chief magistrate of the Huntsville Municipal Court. Culver also interviewed Banks regarding the October 10, 2004, incident. Based on those interviews, Culver filled out a complaint form, which states:
 

 “In the Municipal Court of the City of Huntsville, County of Madison, State of Alabama, and before me, magistrate of said court, personally appeared this day FREDERICK BURNETT who, upon first being duly sworn, states on oath that he/she has probable cause for believing and does believe that one KENNETH RAVENEL M, BL, 05/20/1957, whose name is otherwise unknown to the complainant, did, on to wit: October 10, 2004, within twelve months of making this complaint and within the City of Huntsville, Alabama, commit the offense of HARASSMENT-THREAT, at to wit: 2115 WINCHESTER RD. HUNTSVILLE AL located within the City of Huntsville, Alabama, in that he/she did, WITH THE INTENT TO HARASS, ANNOY, OR ALARM ANOTHER PERSON HE OR SHE MAKES A THREAT VERBAL OR NONVERBAL, MADE WITH THE INTENT TO CARRY OUT THE THREAT, THAT WOULD CAUSE A REASONABLE PERSON WHO IS THE TARGET OF THE THREAT TO FEAR FOR HIS OR HER SAFETY ... DID APPROACH VICTIM FREDERICK BURNETT DURING WORSHIP SERVICES AT CHURCH AND SAID ‘LEAVE MY F[* * ⅜ * * *] WIFE ALONE, I AM GOING TO KILL YOUR F[* * * * * *] A[* *],’ CAUSING HIM TO FEAR FOR HIS SAFETY.
 

 “In violation of city ordinance 17-l(a) adopting code of Alabama, 13A-11-8(a)(2).”
 
 [1]
 

 Culver testified that, based on his interviews with Burnett and Banks, there was probable cause to issue a warrant for the arrest of Ravenel on the charge of harassment, as defined in the complaint. Accordingly, Culver signed a warrant for Ra-venel’s arrest and processed the warrant that day. Culver testified that the warrant was based solely on the comments Burnett alleged Ravenel had made to him on October 10, 2004, at their church and not on any other statements made at any other time. Ravenel testified that he did not make the statement Burnett attributed to him in the complaint.
 

 On May 16, 2005, Ravenel was arrested based on the warrant issued by Culver. Ravenel paid a cash bond of $500 on May 17, 2005. Thereafter, the case was set for trial, but it was continued at least two times. The case was last set for trial on August 25, 2005. On that occasion, Burnett did not appear for the trial, and the criminal court entered a nolle prosequi on the motion of the prosecutor.
 

 Procedural History
 

 On May 8, 2006, Ravenel filed a civil action against Burnett alleging malicious prosecution. In the complaint, Ravenel alleged, among other things, that Burnett had no probable cause to make his complaint to Culver and that he had made the complaint out of malice against Ravenel. Burnett answered, denying the allegations
 
 *597
 
 in the complaint and asserting various affirmative defenses.
 

 On July 9, 2007, Burnett filed a motion for a summary judgment, attaching evi-dentiary materials and a brief. The trial court set a hearing on the motion for August 16, 2007. Ravenel filed a response to the summary-judgment motion on August 14, 2007. On August 15, 2007, Raven-el requested a continuance of the hearing and filed a motion to compel discovery. The trial court set a hearing on the motion to compel discovery for September . 19, 2007, and reset the hearing on the summary-judgment motion for that same date. After holding the scheduled hearing, the trial court granted the summary-judgment motion on September 21, 2007.
 

 Ravenel filed a motion to alter or amend the judgment on October 21, 2007. The trial court denied the motion on November 15, 2007. Ravenel filed his notice of appeal on December 19, 2007.
 

 Issue
 

 On appeal, Ravenel argues that the trial court erred in entering the summary judgment for Burnett because, he says, there are genuine issues of material fact as to whether Burnett had probable cause to file his criminal complaint against Ravenel and whether Burnett filed the complaint out of malice.
 

 Standard of Revietv
 

 “ ‘ “On appeal, this Court reviews a summary judgment de novo.”
 
 DiBiasi v. Joe Wheeler Elec. Membership Corp.,
 
 988 So.2d 454, 459 (Ala.2008) (citing
 
 Ex parte Essary,
 
 992 So.2d 5, 8 (Ala.2007)). In order to uphold a summary judgment, we must determine that “there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Rule 56(c)(3), Ala. R. Civ. P. “When the movant makes a prima facie showing that those two conditions have been satisfied, the burden then shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact.”
 
 Blue Cross & Blue Shield of Alabama v. Hodurslci,
 
 899 So.2d 949, 952 (Ala.2004). Substantial evidence is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989);
 
 see also
 
 § 12 — 21—12(d), Ala.Code 1975. In reviewing a summary judgment, we must view the evidence in the light most favorable to the nonmovant.
 
 Johnny Ray Sports, Inc. v. Wachovia Bank,
 
 982 So.2d 1067, 1071 (Ala.2007). “Finally, this Court does not afford any presumption of correctness to the trial court’s ruling on questions of law or its conclusion as to the appropriate legal standard to be applied.”
 
 DiBiasi,
 
 988 So.2d at 459.’
 

 “Catrett v. Baldwin County Elec. Membership Corp.,
 
 996 So.2d 196, 199 (Ala.2008).”
 

 Moon v. Pillion, 2
 
 So.3d 842, 845 (Ala.2008).
 

 Legal Analysis
 

 The elements of a claim of malicious prosecution are: (1) institution of a prior judicial proceeding by the present defendant, (2) a lack of probable cause, (3) malice on the defendant’s part, (4) termination of the prior proceeding in favor of the present plaintiff, and (5) damage.
 
 Delchamps, Inc. v. Bryant,
 
 738 So.2d 824, 831-33 (Ala.1999). The parties agree that there is no dispute that Burnett instituted a criminal proceeding against Ravenel;
 
 *598
 
 that the criminal proceeding was terminated in favor of Ravenel,
 
 see Chatman v. Pizitz, Inc.,
 
 429 So.2d 969 (Ala.1983) (holding that the entry of a nolle prosequi generally suffices as a termination of a criminal proceeding in favor of the plaintiff in a malicious-prosecution action); and that Ravenel sustained damages. “In this case, only the second and third elements — lack of probable cause and malice — are at issue.”
 
 Favorite Market Store v. Waldrop,
 
 924 So.2d 719, 722 (Ala.Civ.App.2005).
 

 “Probable cause is defined as ‘ “[a] reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged.” ’ ”
 
 Eidson v. Olin Corp.,
 
 527 So.2d 1288, 1285 (Ala.1988) (quoting
 
 Parisian Co. v. Williams,
 
 203 Ala. 378, 383, 83 So. 122, 127 (1919)). “ ‘The question is not whether the [malicious prosecution] plaintiff was guilty of the thing charged, but whether the [malicious prosecution] defendant
 
 acted in good faith on the appearance of things.’
 
 ”
 
 Eidson,
 
 527 So.2d at 1285 (quoting
 
 Birwood Paper Co. v. Damsky,
 
 285 Ala. 127, 134-35, 229 So.2d 514, 521 (1969)). Our supreme court has stated:
 

 “The test that this Court must apply when reviewing the lack-of-probable-cause element in a malicious prosecution case in which summary judgment has been granted to a defendant is as follows: Can one or more undisputed facts be found in the record below establishing that the defendant acted in good faith on the appearance of things as they existed when suit was filed, based upon direct evidence, or upon circumstantial evidence and inferences that can reasonably be drawn therefrom? If so, then summary judgment in favor of the defendant on plaintiffs malicious prosecution count would be appropriate.”
 

 Eidson,
 
 527 So.2d at 1285-86. In other words, “[i]f there are any undisputed facts of record establishing that [the defendant] had probable cause to bring the former action ... against [the plaintiff], then [the plaintiff] cannot recover for malicious prosecution and summary judgment is appropriate.”
 
 Eidson,
 
 527 So.2d at 1285.
 

 In his brief to this court, Ravenel points out that the harassment warrant was based solely on Ravenel’s alleged direct threat to Burnett made on October 10, 2004, and not on any prior statements or events. Ravenel argues that summary judgment is inappropriate in this case because there is a factual dispute as to whether Ravenel made the October 10, 2004, threat, as Burnett claims. As Raven-el puts it, because no independent witness can testify as to the content of his and Burnett’s conversation, “[t]he current case is essentially a case of one person’s ‘word’ versus another.” Appellant’s brief, p. 6.
 

 We agree that the warrant charged Ravenel with harassment, as defined in § 13A-ll-8(a)(2), solely on the basis of the alleged October 10, 2004, statement and not based on any of the preceding events or prior statements allegedly made by Ravenel. In
 
 Lee v. Minute Stop, Inc.,
 
 874 So.2d 505 (Ala.2003), the Alabama Supreme Court stated:
 

 “Alabama law protects those who, in good faith, assist law-enforcement officials in identifying persons who may have committed a crime. In
 
 Crown Central Petroleum Corp. v. Williams,
 
 679 So.2d 651, 654 (Ala.1996), this Court, quoting
 
 Wofford Oil Co. v. Stauter,
 
 26 Ala.App. 112, 154 So. 124 (1934), stated:
 

 “ ‘In
 
 Wofford Oil Co. v. Stauter,
 
 26 Ala.App. [112] at 114, 154 So. [124] at 126 [ (1934) ], the Court of Appeals noted the general rule:
 

 
 *599
 
 “ ‘ “If [the defendant’s agent] merely reported to the police officers what he had seen and the arrest and imprisonment of plaintiff followed from an investigation subsequently made by the officers, the act complained of would be the act of the officers and not of [the agent], although [the agent] had furnished the information leading to the investigation and arrest....’”
 

 “In
 
 Cutts [v. American United Life Ins. Co.],
 
 505 So.2d [1211] at 1215 [(Ala.1987) ], this Court, quoting
 
 Alabama Power Co. v. Neighbors,
 
 402 So.2d 958, 964 (Ala.1981), quoting in turn
 
 Dismukes v. Trivers Clothing Co.,
 
 221 Ala. 29, 32, 127 So. 188, 190 (1930), stated:
 

 “ ‘ “Giving information of a crime to officers, or a request that the officers investigate a crime is not aiding or abetting or instigating a prosecution,
 
 unless such information was a misrepresentation of the facts in order to induce action, or there ivas a suppression of known material facts.”
 
 ’
 

 “In
 
 Cutts,
 
 this Court stated that ‘Merely giving or negligently failing to give information to law enforcement officials is not enough’ to sustain a malicious-prosecution claim. 505 So.2d at 1215. See also
 
 Pannell v. Reynolds,
 
 655 So.2d 935, 938 (Ala.1994), where this Court said, ‘The
 
 [Alabama Power Co. v.] Neighbors
 
 [, 402 So.2d 958 (Ala.1981),] rule allows a citizen to fulfill one’s civic duty to come forth in good faith with information concerning a suspected crime, without fear of repercussions if the information later leads to a wrongful arrest.’ The Court, citing
 
 Ritch v. Waldrop,
 
 428 So.2d 1 (Ala.1982), added a caveat, however, stating, ‘The rule, however, presupposes that the citizen has stated all material facts within his or her knowledge regarding the alleged crime and has not brought about the indictment by fraud, by suppressing facts, or by other misconduct.’ 655 So.2d at 938.”
 

 874 So.2d at 512-13.
 

 Based on
 
 Lee,
 
 if Ravenel has presented substantial evidence indicating that Burnett misrepresented the content of their October 10, 2004, conversation so as to have brought about the warrant through fraud, then the summary judgment would be inappropriate. We find that there is substantial evidence from which a reasonable jury could infer that Burnett falsely accused Ravenel of threatening him on October 10, 2004. Ravenel testified under oath that he did not threaten Burnett, as alleged in the October 15, 2004, complaint, but merely asked him to stop communicating with Shelly. Although Burnett argues in his brief to this court that Shelly and Banks corroborated his testimony, both witnesses testified that they did not hear the conversation between Burnett and Ra-venel on October 10, 2004.
 

 Burnett essentially argues that no reasonable jury could believe Ravenel’s denial based on the pattern of abusive conduct committed by Ravenel against Burnett before October 10, 2004. However, we note that almost all the evidence regarding Ra-venel’s past conduct was also in conflict. Ravenel testified that he saw “with his own eyes” Burnett and Shelly together at a time when she was supposed to be in Atlanta or on her way back from Atlanta and he was supposed to be in Philadelphia. Ravenel also stated that Shelly had tacitly admitted to the affair. Thereafter, Raven-el talked with his pastor about the situation, but he denies he ever threatened to kill Burnett. Ravenel disputes Britton’s version of the church-parking-lot incident. Burnett does not claim that Ravenel threatened his life at the time of that incident, and Britton testified that, al
 
 *600
 
 though Ravenel was obviously angry and upset, she did not hear what Ravenel said to Burnett. Ravenel also denies that he carried a concealed weapon to church, as Shelly testified.
 

 Basically, in order to accept Burnett’s argument, we would have to determine that the testimony of all the witnesses against Ravenel was credible but that all Ravenel’s testimony disputing their statements was not credible. However, “the Alabama Supreme Court has admonished that neither the trial court nor a reviewing court ‘may undertake credibility assessments in reviewing testimonial evidence submitted in favor of, and in opposition to, a motion for a summary judgment.’
 
 Lyons v. Walker Reg’l Med. Ctr.,
 
 868 So.2d 1071, 1077 (Ala.2003).”
 
 Alpine Assoc. Indus. Servs., Inc. v. Smitherman,
 
 897 So.2d 391, 397 (Ala.Civ.App.2004). A jury may very well determine that Ravenel is not telling the truth, or that Burnett’s witnesses are more believable, but that decision may not be made by the court on a motion for a summary judgment.
 

 The existence of probable cause is solely an issue for the court, and not the jury, only if the facts relating to the issue of probable cause are undisputed.
 
 Lee,
 
 874 So.2d at 511 (Ala.2003) (citing
 
 Schwabacher v. Herring,
 
 35 Ala.App. 496, 500, 48 So.2d 574, 577 (1950);
 
 Glidden Co. v. Laney,
 
 234 Ala. 475, 175 So. 296 (1937); and
 
 Dodson v. Ford Motor Credit Co.,
 
 46 Ala. App. 387, 243 So.2d 43 (Civ.App.1971)). Because the facts regarding the content of Ravenel’s statement to Burnett on October 10, 2004, are in dispute, summary judgment was not appropriate.
 

 Burnett denies that he instituted the criminal-harassment proceeding with malice. However, malice may “ ‘be inferred from circumstances surrounding and attending prosecution[,] ... because malice is incapable of positive, direct proof and must out of necessity be rested on inferences and deductions from facts which are heard by the trier of fact.’ ”
 
 Thompson v. Harris,
 
 603 So.2d 1086, 1088-89 (Ala.Civ.App.1992) (quoting
 
 Thompson v. Kinney,
 
 486 So.2d 442, 445 (Ala.Civ.App. 1986)). Ravenel testified that he inferred that Burnett had falsely accused him of threatening his life because Ravenel had caught him and Shelly in their affair. If a jury accepts Ravenel’s version of events, and not the version presented by Shelly and Burnett, the jury could reach that same inference.
 

 Moreover, “ ‘[mjalice, for purposes of a malicious prosecution action, may be inferred from want of probable cause.’ ”
 
 Harris,
 
 603 So.2d at 1088 (quoting
 
 Kinney,
 
 486 So.2d at 445). Because we find that there is a genuine issue of material fact regarding the probable-cause element, the jury could find that Burnett had no probable cause for accusing Ravenel of threatening his life on October 10, 2004. Therefore, we find that there is also a question of material fact regarding the malice element.
 

 For the foregoing reasons, the summary judgment is reversed and the case is remanded for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN, J., concur.
 

 BRYAN and THOMAS, JJ., concur in the result, without writings.
 

 [1]
 

 . Section 13A-11 — 8(a)(2) defines "harassment” as
 

 "a threat, verbal or nonverbal, made with the intent to carry out the threat, that would cause a reasonable person who is the target of the threat to fear for his or her safety.”