The City of Birmingham (hereinafter referred to as "the City") appeals the trial court's denial of its preverdict and postverdict motions for judgments as a matter of law as to certain claims that had been asserted against it by John Charles Sutherland. Sutherland cross-appeals the trial court's judgment as a matter of law in favor of the City on other claims that he asserted. We reverse and remand as to the City's appeal and affirm as to Sutherland's cross-appeal. On December 22, 1998, Sutherland sued the City, seeking to recover damages on claims of false imprisonment, "public ridicule" and defamation, and assault and battery arising from a June 27, 1997, incident at a Colonial Bank (hereinafter referred to as "the bank") located in Birmingham, in which Sutherland was accused by the bank's manager, Mark Renda, of passing two counterfeit checks. After an initial confrontation with Renda, Sutherland left the bank; he returned soon thereafter to discuss the accusation with Renda. When Sutherland returned, Renda was reporting to the University of Alabama at Birmingham ("UAB") Police Department, by telephone, his suspicion that Sutherland had passed counterfeit checks. The UAB Police Department then sent a radio dispatch to the Birmingham Police Department stating that there was a forgery suspect at the bank.
A "plain-clothes" police officer, Michael Wooten, was the first officer to arrive at the bank. When he arrived, Renda was still in his office and Sutherland was standing outside the office. Officer Wooten went to Renda's office, and Renda identified Sutherland as the suspect. Officer Wooten then arrested Sutherland by drawing his handgun, pointing it at Sutherland, and instructing him not to move. When additional officers arrived, Sutherland was handcuffed and seated in the bank lobby. He was later taken to the Birmingham Police administration building, where he was questioned and released within an hour; no charges were ever filed against him as a result of the arrest.
On January 20, 1999, the City filed an answer that asserted numerous defenses to Sutherland's complaint, including immunity under §§ 6-5-338
and 11-47-190, Ala. Code 1975. The City also asserted that there was no basis for liability on its part because, it argued, Wooten had probable cause to arrest Sutherland. Following discovery and court-ordered mediation, the City filed a motion for a summary judgment on August 11, 2000, with a supporting brief and exhibits. On August 29, 2000, Sutherland filed a response and a memorandum in opposition to the City's motion for a summary judgment, with attached exhibits. On October 31, 2000, the trial court entered an order on its case action summary that stated, in pertinent part:
 "The City['s] . . . motion for summary judgment is granted as to all claims except those set out in Alabama Code Section 11-47-190 for neglect, *Page 757 
 carelessness or unskillfulness. Section 6-5-338, supra, establishes immunity for (a) police officers and (b) their governmental unit for discretionary functions. Insufficient facts are before the Court to establish discretionary immunity. While [Sutherland's] case may be subject to a judgment as a matter of law, [the City's] motion for summary judgment is overruled as to negligence claims."
On November 6, 2000, the City filed a motion requesting that the trial court reconsider its motion for a summary judgment; on January 8, 2001, it filed what it termed a "supplemental reply" to its motion to reconsider. On January 17, 2001, the City filed a motion to stay the trial of the case, which was set for January 22, 2001, to await a ruling by this Court on a writ of mandamus the City had also filed on January 17, 2001, in regard to the trial court's denial of a summary judgment to the City on all of Sutherland's claims. On January 22, 2001, this Court entered an order denying the City's petition for writ of mandamus.
The trial of the case began on January 22, 2001. At the close of Sutherland's case-in-chief, the City filed a motion for a judgment as a matter of law; the trial court denied that motion. The trial transcript shows that the City again made a motion for a judgment as a matter of law at the close of all evidence, and the trial judge granted it as to Sutherland's false-imprisonment claim, stating, in pertinent part:
 "The Court is going to find as a matter of law that . . . Officer Wooten had probable cause and acted within his authority to make the arrest; therefore, the temporary detention was also justified. I find as a matter of law and a matter of fact that you can do something legally but do it in an illegal way.
 "So I find that they can proceed to the jury on negligence, assault and battery, and the subpart, excessive use of force, which is part of that assault and battery."
On January 25, 2001, the jury returned a verdict for Sutherland in the amount of $115,000. Those damages were reduced by $50,000, the amount of a pro tanto settlement paid by Colonial Bank and Renda. (See footnote one of this opinion.) On February 23, 2001, the trial court entered a judgment against the City in the amount of $65,000. On that same day, the City filed a renewed motion for a judgment as a matter of law, or in the alternative, a motion to vacate the verdict, or a motion for a new trial; on March 9, 2001, the City amended its postjudgment motions to include additional grounds supporting its argument that it was entitled to a judgment as a matter of law based on the defenses of probable cause and discretionary immunity, and to include additional grounds supporting its argument that it was entitled to a new trial. On March 27, 2001, the trial court denied the City's renewed motion for a judgment as a matter of law and other postjudgment motions. On April 23, 2001, the City filed a notice of appeal; Sutherland filed a notice of cross-appeal on May 7, 2001.
In its appeal, the City argues that the trial court erred by not entering a summary judgment for it on all claims and by not granting its preverdict or postverdict motions for a judgment as a matter of law, on the grounds (1) that § 6-5-338, Ala. Code 1975, provides immunity to the City for what, it says, was Officer Wooten's exercise of a discretionary function; (2) that § 11-47-190, Ala. Code 1975, provides the City substantive immunity because, it says, Officer Wooten did not act negligently; (3) that the defense of probable cause is a defense to its liability, citing Couch v. *Page 758 Sheffield, 708 So.2d 144 (Ala. 1998); and (4) that Couch v. Sheffield,supra, provides the City with immunity against the intentional acts of Officer Wooten that constitute willful or malicious conduct or acts taken in bad faith.
Sutherland cross-appeals the trial court's judgment as a matter of law for the City on his claim of false imprisonment. Sutherland argues that the trial court erred because, he says, the evidence concerning Officer Wooten's actions in making the arrest was in dispute.
Our review of the trial court's rulings on the City's preverdict and postverdict motions for a judgment as a matter of law is dispositive of this case. See Superskate, Inc. v. Nolen, 641 So.2d 231, 233 (Ala. 1994) ("Ordinarily, any issue as to the denial of [a] summary judgment motion would be moot, because the sufficiency of the evidence at trial would be the significant question on appeal."). Our review of the grant or denial of a motion for a judgment as a matter of law is governed by the following standard:
 "`The standard of review applicable to a motion for directed verdict or judgment notwithstanding the verdict [now referred to as preverdict and postverdict motions for a judgment as a matter of law] is identical to the standard used by the trial court in granting or denying the motions initially. Thus, when reviewing the trial court's ruling on either motion, we determine whether there was sufficient evidence to produce a conflict warranting jury consideration. And, like the trial court, we must view any evidence most favorably to the non-movant.'"
Glenlakes Realty Co. v. Norwood, 721 So.2d 174, 177 (Ala. 1998) (quotingBussey v. John Deere Co., 531 So.2d 860, 863 (Ala. 1988)).
The City first argues that § 6-5-338, Ala. Code 1975, provides it immunity for what, it says, was Officer Wooten's exercise of a discretionary function in arresting Sutherland. Section 6-5-338 states, in pertinent part:
 "(a) Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.
 "(b) This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers. No immunity is extended hereby to any private non-governmental person or entity, including any private employer of a peace officer during that officer's off-duty hours."
(Emphasis added.) This Court has stated that "subsection (b) makes it clear that *Page 759 
this immunity is extended to `governmental units or agencies authorized to appoint [law-enforcement] officers.'" Telfare v. City of Huntsville, [Ms. 1000357, January 18, 2002] ___ So.2d ___, ___ (Ala. 2002).
In Telfare, supra, this Court further observed:
 "In Ex parte City of Gadsden, 781 So.2d 936 (Ala. 2000), we squarely addressed the issue of a municipality's liability for a police officer's conduct. In Ex parte City of Gadsden we stated: '[W]e must first determine whether [the officer] was engaged in performing a discretionary function.' 781 So.2d at 938. Discretionary functions are those as to which `there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice involving what is just and proper under the circumstances.' Wright v. Wynn, 682 So.2d 1, 2 (Ala. 1996). Generally, arrests and attempted arrests are classified as discretionary functions.
 "`A State agent shall be immune from civil liability in his or her capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"'. . . .
 "`(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons . . . .'
 "Ex parte Cranman, 792 So.2d 392, 405 (Ala. 2000) (second emphasis added)."
___ So.2d at ___. "This Court has also held, however, that acts taken in bad faith, or willful or malicious conduct, will not be considered discretionary in nature." Ex parte City of Montgomery, 758 So.2d 565, 569
(Ala. 1999) (citing Couch v. City of Sheffield, 708 So.2d 144, 153 (Ala. 1998); see Wright v. Wynn, 682 So.2d 1 (Ala. 1996); Barnes v. Dale,530 So.2d 770 (Ala. 1988); DeStafney v. University of Alabama,413 So.2d 391 (Ala. 1981)).
As a law-enforcement officer, Officer Wooten's power to arrest is governed by the laws of this State. This power is recognized in §6-5-338(a), and the laws of this State provide reasonably well-defined rules governing when an officer may make a warrantless arrest — such as Officer Wooten's arrest of Sutherland. Rule 4.1(a), Ala.R.Crim.P., and § 15-10-3, Ala. Code 1975, provide the limited circumstances under which an officer may make a warrantless arrest. Rule 4.1(a) states:
"(a) Arrest by a Law Enforcement Officer.
 "(1) A law enforcement officer may arrest a person without a warrant if:
 "(i) The law enforcement officer has probable cause to believe that a felony has been committed, or is being committed, and that the person to be arrested committed it, or
 "(ii) Any offense has been committed in the law enforcement officer's presence or view, or
 "(iii) The arrest is otherwise authorized by statute, such as Ala. Code 1975, §§ 32-5-171, 32-5A-191, 15-10-3.
 "(2) The law enforcement officer shall inform the person arrested of the officer's authority and the cause of the arrest, except when the person is arrested in the actual commission of the offense or during pursuit immediately thereafter."
(Emphasis added.) Similarly, § 15-10-3(a), Ala. Code 1975, states:
 "(a) An officer may arrest a person without a warrant, on any day and at any time in any of the following instances: *Page 760 
 "(1) If a public offense has been committed or a breach of the peace threatened in the presence of the officer.
 "(2) When a felony has been committed, though not in the presence of the officer, by the person arrested.
 "(3) When a felony has been committed and the officer has reasonable cause to believe that the person arrested committed the felony.
 "(4) When the officer has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that a felony had not in fact been committed.
 "(5) When a charge has been made, upon reasonable cause, that the person arrested has committed a felony.
 "(6) When the officer has actual knowledge that a warrant for the person's arrest for the commission of a felony or misdemeanor has been issued, provided the warrant was issued in accordance with this chapter. However, upon request the officer shall show the warrant to the arrested person as soon as possible. If the officer does not have the warrant in his or her possession at the time of arrest the officer shall inform the defendant of the offense charged and of the fact that a warrant has been issued.
 "(7) When the officer has reasonable cause to believe that a felony or misdemeanor has been committed by the person arrested in violation of a protection order issued by a court of competent jurisdiction.
 "(8) When an offense involves domestic violence as defined by this section, and the arrest is based on probable cause, regardless of whether the offense is a felony or a misdemeanor."
(Emphasis added.)
We, therefore, apply these rules to our initial determination of whether Officer Wooten had the discretion to make a warrantless arrest of Sutherland. We note that these rules do not afford an opportunity to exercise discretion under certain circumstances (i.e., no probable cause to believe that a felony has been committed and that the person arrested committed it, or if no offense has been committed in the officer's presence). If the initial criteria for making a warrantless arrest were satisfied in this case, we would conclude that Officer Wooten's choices as to whether to make a warrantless arrest, and how to effect that arrest, represent discretionary functions. Accordingly, we consider whether Officer Wooten had probable cause to make a warrantless arrest of Sutherland.
Section 15-10-3(a) provides guidance in determining whether Officer Wooten had probable cause to arrest Sutherland. We note that our consideration of probable cause is also critical to Sutherland's cross-appeal, because the trial court's finding that Officer Wooten had probable cause for the arrest was the basis of its judgment as a matter of law for the City on Sutherland's claim of false imprisonment. Therefore, we will address both the discretionary-immunity subpart of the City's argument on appeal and Sutherland's cross-appeal.
The Court of Criminal Appeals, in Owen v. State, 418 So.2d 214
(Ala.Crim.App. 1982), equated the term "probable cause" with "reasonable cause," as that latter term is used in § 15-10-3. In Owen, the Court of Criminal Appeals observed:
 "`An officer may arrest without a warrant when "a felony has been committed and he has reasonable cause to believe *Page 761 
 that the person arrested committed it." Section 15-10-3, Code of Alabama 1975. The rule of reasonable or probable cause is a "practical, nontechnical conception." Brinegar v. United States, 388 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). As defined in Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959):
 "`"Probable cause exists where `the facts and circumstances within their (the arresting officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been committed . . . ." (Citations omitted)
 "`In determining whether there is probable cause to arrest, it is not necessary that the officer have before him evidence that would support a conviction for the offense. He need only have facts and circumstances within his knowledge which are reasonably trustworthy and which would lead a prudent man to believe that the accused committed or was committing an offense.'"
418 So.2d at 220 (quoting Tice v. State, 386 So.2d 1180, 1183
(Ala.Crim.App. 1980)). See also Ex parte City of Montgomery, 758 So.2d at 570.
The record in this case shows that Officer Wooten went to the bank as a result of a dispatch sent out by the UAB Police Department. At trial, Rose Marie Sanders, the communications supervisor at the UAB Police Department who was the custodian of the department's radio logs and audiotapes, testified as follows concerning the dispatch sent out to the Birmingham Police Department to which Officer Wooten was responding when he arrived at the bank:
 "Q. When you picked up the tape for the ladies and gentlemen of the jury, after they had cut it off, when you picked it up from me, didn't the tape start out saying they want some more information?
 "A. Just now, it started out they were asking for further description information.
 "Q. Further information. And people started talking about forgery; right?
"A. Yes, sir.
"Q. Felony; correct?
"A. Yes, sir.
"Q. And you contacted the City of Birmingham; correct?
"A. Yes, sir.
"Q. To the best of your knowledge, we went there; correct?
"A. Yes, sir."
Officer Wooten further testified as follows at trial, after a recording of the dispatch tape had been played:
"Q. Officer Wooten, were you in car 346 that day?
"A. Yes, sir, that was my number.
"Q. And that was your voice on that tape?
"A. Yes.
 "Q. And did you hear on your dispatch `Suspects at Colonial Bank suspected of a forgery ring.'
"A. Yes, sir.
"Q. And you responded to that?
"A. Yes, sir.
"Q. Did you believe that was a felony?
"A. Yes, sir.
"Q. And you were responding to that felony?
"A. Yes, sir."
Renda, the manager of the bank, also testified at one point that Officer Wooten, when he arrived at Renda's office, identified himself to Renda as a police officer, but later testified that Officer Wooten did *Page 762 
not identify himself as a police officer, but that Renda assumed he was. In any event, it is undisputed that Renda then identified Sutherland to Officer Wooten as the suspect.
Under these circumstances, we conclude that Officer Wooten had probable cause to believe that a felony had been committed and that Sutherland had committed it.[1] Thus, he was performing a discretionary function when he chose to make a warrantless arrest and a discretionary function when he chose the manner in which he would effect the arrest. Cranman, supra. Sutherland further failed to specifically allege, or to present any evidence tending to prove, that Officer Wooten's actions were taken in bad faith, or that his conduct was willful or malicious. The gist of the allegations made by Sutherland was that Officer Wooten negligently had exceeded his authority in effecting the arrest. Allegations of negligence are not sufficient to remove the immunity the City is provided for Officer Wooten's performance of a discretionary function. City ofMontgomery, supra.
Thus, the trial court erred in not finding that the City had discretionary-function immunity, i.e., immunity from tort liability arising out of Officer Wooten's conduct in the performance of a discretionary function within the line and scope of his law-enforcement duties in accordance with § 6-5-338, Ala. Code 1975, as a matter of law. The judgment of the trial court is therefore reversed, and the cause is remanded for the trial court to enter a judgment as a matter of law for the City on Sutherland's negligence and assault-and-battery claims. As to Sutherland's cross-appeal, we affirm the trial court's judgment as a matter of law for the City on Sutherland's false-imprisonment claim based on its finding, supported by the record, that Officer Wooten had probable cause to arrest Sutherland.
1001327 — REVERSED AND REMANDED.
1001458 — AFFIRMED.
Moore, C.J., and See, Brown, and Stuart, JJ., concur.
[1] Under § 13A-9-3, Ala. Code 1975, passing a counterfeit check constitutes the crime of forgery in the second degree. Section 13A-9-3
states, in pertinent part:
 "(a) A person commits the crime of forgery in the second degree if, with intent to defraud, he falsely makes, completes or alters a written instrument which is or purports to be, or which is calculated to become or to represent if completed:
 "(1) A deed, will, codicil, contract, assignment or a check, draft, note or other commercial instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status; . . .
". . . .
"(b) Forgery in the second degree is a Class C felony."
(Emphasis added.)