S. Felton Mitchell, Jr., appeals from a judgment entered on a jury verdict against him and in favor of Folmar Associates, LLP ("Folmar"), the plaintiff in this malicious-prosecution action. The judgment awarded $51,918.40 in compensatory damages, which was the exact amount of the attorney fees and costs Folmar expended in defending against Mitchell's first counterclaim (the gravamen of Folmar's malicious-prosecution action), and $103,836.80 in punitive damages, which is two times the amount of the compensatory damages.
Folmar is a partnership primarily engaged in developing and managing shopping centers. William M. Cagle, Jr., was one of three partners in Folmar before his death on September 25, 1997. Folmar advanced Cagle moneys against future distributions for many years before his death; as a result, at the time of his death Cagle owed Folmar a substantial sum of money. Folmar filed a claim against Cagle's estate for $407,688.01 on April 24, 1998. The claim was satisfied by Folmar's withholding the necessary amounts from Cagle's estate's share of distributions made to the partners of Folmar.
Approximately nine months after the claim had been satisfied, Mitchell, who had then been appointed as administrator of Cagle's estate, filed an objection to Folmar's claim and filed two counterclaims against Folmar. Counterclaim number two sought an accounting by Folmar, which Mitchell later conceded that he knew he, as administrator of Cagle's estate, was entitled to as a matter of law. Counterclaim number one ("counterclaim one"), which is the basis for the malicious-prosecution action, alleged that Folmar had acted in combination with other persons to fraudulently obtain, or to obtain without valuable consideration, before Cagle's death, Cagle's signature on an amendment to the partnership agreement. Mitchell alleged that the amendment substantially diminished or damaged Cagle's interest — and consequently his estate's interest — in Folmar. Mitchell pursued that counterclaim in the Probate Court of Mobile County for at least 18 months before he voluntarily dismissed it.
Several issues Mitchell raises on appeal relate to the trial court's alleged error in denying his motion for a summary judgment. However, we do not review a trial court's denial of a summary-judgment motion following a trial on the merits. See Grayson v. Hanson, 843 So.2d 146
(Ala. 2002); Superskate, Inc. v. Nolen, 641 So.2d 231, 233 (Ala. 1994); see also Lind v. United Parcel Service, Inc., 254 F.3d 1281, 1283-84
(11th Cir. 2001). Mitchell also filed a motion for a judgment as a matter *Page 1117 
of law at the close of all the evidence; the trial court denied the motion.
In Eidson v. Olin Corp., 527 So.2d 1283, 1284 (Ala. 1988), this Court restated the existing law, as follows:
 "`Malicious prosecution is an action disfavored in the law.' Cutts v. American United Life Insurance Co., 505 So.2d 1211, 1212 (Ala. 1987). The reason for such disfavor is clear: '[P]ublic policy requires that all persons shall resort freely to the courts for redress of wrongs and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge.' Boothby Realty Co. v. Haygood, 269 Ala. 549, 554, 114 So.2d 555, 559 (1959)."
Even so, because the jury found for Folmar, the evidence must be viewed in a light most favorable to Folmar. Hornady Truck Line, Inc. v.Meadows, 847 So.2d 908 (Ala. 2002). Liberty Nat'l Life Ins. Co. v.Daugherty, 840 So.2d 152 (Ala. 2002).
Mitchell is an attorney; he knew or should have known that fraud is a personal claim that abated with Cagle's death, because Cagle had not filed an action to recover for fraud before his death. Ala. Code 1975, § 6-5-462. On August 18, 1999, six months after Mitchell filed counterclaim one, Mitchell testified at a hearing in the probate court that he filed the counterclaim alleging fraud even though he had no information at the time he filed the counterclaim indicating that Folmar had committed fraud against Cagle or that Folmar had misrepresented to or concealed from Cagle any fact. Mitchell also admitted that six months after that counterclaim was filed he still had no information indicating that Folmar had committed fraud in any respect. Mitchell also testified that he had no evidence or information indicating that Cagle was incompetent or incapacitated when he signed the amendment to the partnership agreement (although he alleged this in counterclaim one), and that Mitchell had no evidence indicating that the amendment to the partnership agreement substantially diminished or damaged the value of Cagle's partnership interest.
On January 20, 2000, 11 months after he filed the counterclaim, Mitchell again testified at a hearing in the probate court that he still had no evidence of any fact that was misrepresented to or concealed from Cagle in connection with Cagle's execution of the amendment to the partnership agreement. Mitchell again admitted that he had no evidence to support his contention that Cagle was incompetent or incapacitated when he executed the amendment to the partnership agreement.
At the trial of this malicious-prosecution action, Mitchell testified that he knew Folmar's claim against Cagle's estate had been satisfied before he filed the objection to the claim and the counterclaims. He also testified that at the time of the trial he still had no knowledge of any fact that had been misrepresented to or suppressed from Cagle and that he had no knowledge regarding Cagle's mental capacity at the time he executed the amendment to the partnership agreement. Mitchell conceded at trial that while he alleged that Cagle's signature to the partnership amendment had been procured by fraud, he still had not talked with any of the persons present when Cagle signed the amendment. He also admitted that he had never calculated the purported diminution in value of Cagle's interest in the partnership that he alleged in counterclaim one was caused by the execution of the amendment.
 "In order to succeed in a malicious prosecution action, a plaintiff must prove that a prior judicial proceeding was instigated by the present defendant *Page 1118 
without probable cause and with malice; that the prior proceeding ended in favor of the present plaintiff; and that the present plaintiff was damaged thereby."
Fina Oil Chem. Co. v. Hood, 621 So.2d 253, 256 (Ala. 1993) (citing Lumpkin v. Cofield, 536 So.2d 62 (Ala. 1988)).
There was evidence from which the jury could reasonably have inferred that Mitchell filed in the probate court an objection to a claim he knew had already been satisfied and that he filed a counterclaim that he knew had already abated as a matter of law (Ala. Code 1975, § 6-5-462). When he filed counterclaim one — or at any time during the 18 months that elapsed between the filing of the counterclaim and the voluntary dismissal of the claim by Mitchell — Mitchell had no evidence to substantiate his allegation that Folmar had fraudulently obtained Cagle's signature on an amendment to the partnership agreement during Cagle's incapacity and final illness. The jury could have found that Mitchell acted with malice in pursuing the counterclaim and that there was a complete absence of evidence of probable cause to support a fraud action against Folmar. Alabama Power Co. v. Neighbors, 402 So.2d 958
(Ala. 1981).
Mitchell voluntarily dismissed counterclaim one after it had remained pending for 18 months. The fact that Mitchell voluntarily dismissed the underlying action is sufficient to meet Folmar's burden of proof that that counterclaim was disposed of in favor of Folmar. See Barrett MobileHome Transport, Inc. v. McGugin, 530 So.2d 730, 735 (Ala. 1988) ("[T]he requirement of showing a favorable termination may be satisfied by showing that the civil action in question was abandoned or dismissed. . . . [A] voluntary dismissal `without prejudice' will suffice.").
Mitchell contends that the dismissal was made on the basis of the "survival-statute issue,"[1] and not on the grounds urged by Folmar. Even if that contention was relevant — and we cannot say that it was — the document Mitchell filed seeking to have counterclaim one dismissed cannot be located in the record. It does not appear on the pages Mitchell's brief directs us to. The probate judge's order provides:
 "For due cause shown, it is ORDERED by the Court that the dismissal of counterclaim one as filed by S. Felton Mitchell, Jr., as Administrator of the estate of William M. Cagle, Jr., Deceased, be and the same is hereby filed and granted. . . ."
There was substantial evidence of a termination of Mitchell's counterclaim favorable to Folmar.
There was substantial evidence indicating that in defending against Mitchell's counterclaim, Folmar incurred damages in the amount of $49,757 in attorney fees and expenses of $2,161.40. There was substantial evidence as to each element of malicious prosecution; therefore, the trial court did not err in denying Mitchell's motion for a judgment as a matter of law.
 "`"A judgment as a matter of law is proper only where there is a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable people could differ and the moving party is entitled to judgment as a matter of law."' . . . In reviewing the denial of *Page 1119 
a motion for a judgment as a matter of law, this Court is required to view the evidence in a light most favorable to the nonmovant."
Daugherty, 840 So.2d at 156 (quoting Southern Energy Homes, Inc.v. Washington, 774 So.2d 505, 510-11 (Ala. 2000)).
The jury awarded punitive damages; it is therefore necessary to determine whether the trial court erred in permitting the issue of punitive damages to be decided by the jury, because Mitchell filed a motion for a judgment as a matter of law at the close of all the evidence.
At the discretion of the trier of fact, punitive damages may be awarded in a malicious-prosecution action where it is proven by clear and convincing evidence[2] that the defendant consciously and deliberately acted with malice[3] with regard to the plaintiff. Ala. Code 1975, § 6-11-20(a); see Cavalier Mfg., Inc. v. Jackson, 823 So.2d 1237
(Ala. 2001), as it relates to § 6-11-20 and fraud. This calls for a purely objective determination of whether the party having the burden of proof has produced sufficient evidence to create a factual dispute requiring resolution by the jury. In reviewing a ruling on a motion for a judgment as a matter of law, this Court must view the evidence in the light most favorable to the nonmovant (in this case Folmar), and must entertain such reasonable evidentiary inferences as the jury would be free to draw. See General Motors Corp. v. Bell, 714 So.2d 268, 274 (Ala. 1996). In this case, the trial court did not err in determining that it was for the jury to decide whether there was clear and convincing evidence that Mitchell consciously and deliberately acted with malice.
Mitchell contends that the trial court erred in failing to give his requested jury charge on the mitigation of damages. Mitchell requested the following charge, which the trial court denied:
 "It is the duty of one damaged to exercise ordinary care to reduce his damages: he is bound to exercise such care as a reasonably prudent person would exercise under like circumstances to reduce or mitigate the damages. He can recover only such damages as would have been sustained had such care been exercised."
Mitchell's argument in support of the appropriateness of this jury charge is that most of the attorney fees were incurred by Folmar in defending against counterclaim one before Folmar filed a claim against Mitchell in the probate court under the Alabama Litigation Accountability Act, Ala. Code 1975, § 12-19-270 et seq. ("ALAA"), based on the survival statute, Ala. Code 1975, § 6-5-462. Mitchell contends that he should be liable only for the attorney fees and expenses incurred by Folmar from the time Folmar filed a claim under the ALAA until Mitchell dismissed counterclaim one. Mitchell cites no authority to support his contention, and we know of none. The trial court did not *Page 1120 
abuse its discretion in denying this requested charge.
Mitchell's argument that the verdict is excessive is based upon the same contention he presented in support of his requested jury charge on mitigation. He presents no authority to support his argument, and we know of none. The trial court did not err.
AFFIRMED.
Moore, C.J., and Lyons, Johnstone, and Woodall, JJ., concur.
[1] Pursuant to the Alabama Litigation Accountability Act, Ala. Code 1975, § 12-19-270 et seq., Folmar filed a motion in the probate court to recover from Mitchell reasonable attorney fees and expenses Folmar had incurred in defending against the allegations in Mitchell's counterclaim. In this motion, Folmar alleged that Mitchell's fraud action had abated at Cagle's death, which occurred before counterclaim one was filed.
[2] Section 6-11-20(a)(4), Ala. Code 1975, defines clear and convincing evidence as:
 "Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt."
[3] Malice is defined at § 6-11-20(a)(2), Ala. Code 1975, as:
 "The intentional doing of a wrongful act without just cause or excuse, either:
 "a. With an intent to injure the person or property of another person or entity, or
 "b. Under such circumstances that the law will imply an evil intent."