The primary issue presented on this appeal is whether the trial court erred in entering summary judgments for the defendants in an action in which the plaintiff, Douglas Lee, alleged malicious prosecution, false arrest, defamation, and/or negligence in failing to properly train and supervise employees. This appeal also presents a question whether, based on the particular facts of this case, the doctrine of discretionary immunity for police officers set out at § 6-5-338, Ala. Code 1975, is applicable.
Many of the facts are not seriously disputed. Lee, a suspect in an alleged robbery, was arrested on a charge of robbery in the first degree and remained in jail until the date of his preliminary hearing. At the preliminary hearing the district judge dismissed the charge against Lee based on a finding that the officers lacked probable cause to arrest him.
Lee subsequently filed this action, and in his third and final amended complaint he asserted several claims against several defendants. In count one he alleged malicious prosecution against several defendants: Twanda Nobles, the alleged victim of the robbery; Herndon Oil Corporation, d/b/a Ministop Herndon Oil, d/b/a Conoco Station; Minute Stop, Inc.; FB R Investment, Inc. (the corporate defendants are hereinafter referred to collectively as "Minute Stop"); and Mobile police officers K.N. Rodgers, David Walker,[1] James Stabler, and Michael Williams. In count two he alleged false arrest against all the defendants, in their individual and corporate capacities, as applicable. In count three he alleged negligence against Minute Stop, claiming that it failed to adequately train and supervise Twanda Nobles in how to properly report and handle an alleged criminal offense, or how to properly identify persons alleged to be responsible for an alleged crime. In count four Lee alleged negligent supervision and training on the part of the City of Mobile of the four police officers named as defendants in count one. In count five he alleged defamation against Twanda Nobles for allegedly falsely accusing him of robbery, knowing that the allegations were not true. In count six he alleged negligence against the City of Mobile and also alleged that the four officers failed to properly determine that there was no probable cause for his arrest. In count seven he alleged that the officers were guilty of wanton misconduct because, he alleged, they failed to properly and thoroughly investigate the events leading up to his arrest, detention, and prosecution. In count eight he alleged negligence against Twanda Nobles and Minute Stop in identifying and/or accusing Lee of robbery or attempting to rob the store. In count nine he alleged that Twanda Nobles and Minute Stop were guilty of wantonness for incorrectly identifying him as a robber and for accusing him of robbing or attempting to rob Twanda Nobles. In count ten Lee asserted a claim of abuse of *Page 508 
process against the City of Mobile and the four police officers.
Each of the defendants filed a motion for a summary judgment, asserting that there were no genuine issues of material fact in the claims made against them in the case and that each of them was entitled to a judgment as a matter of law. Several items of documentary evidence, including depositions, or excerpts of depositions, and affidavits, were filed in support of and in opposition to the motions for a summary judgment. The trial court granted the defendants' summary-judgment motions.
 Facts
On the evening of January 21, 1999, Lee had dinner with his mother; he later walked down the street and saw that the door to the house occupied by Bobby and Laurie McLaughlin was open. The McLaughlins were acquaintances of Lee's. Lee went into the house and visited with the McLaughlins, whom he described as being on "some prescription medicine, or something." When the couple's two teenage children came home later, an argument between the parents and the children ensued; Lee claimed that he helped diffuse the verbal confrontation. He then went back to his mother's house, had a glass of iced tea, and walked down the street again. He saw that the McLaughlin children were still up, and that there was a lot of yelling and screaming going on, so he went in and again separated the family. He stayed and visited with the McLaughlins for a good while until one of the McLaughlins suggested that the three adults go get some cigarettes.
It is undisputed that Lee went with the McLaughlins, at approximately 4:30 a.m. on January 22, to the Conoco service station on Navco Road in Mobile where the Minute Stop was located, and that Twanda Nobles was the only clerk on duty at the time. According to Lee's own deposition testimony filed in opposition to the motions for a summary judgment, Laurie McLaughlin entered the store first; she was immediately followed by Bobby McLaughlin and Lee. Laurie McLaughlin asked for cigarettes and told Nobles, who was separated from the customers by safety glass, that she often purchased cigarettes from that Conoco service station and paid for them later. Nobles testified that she was not familiar with any credit arrangement Laurie might have had, and when she told Laurie McLaughlin that she was not going to give her the cigarettes, Bobby McLaughlin told Nobles, "I'll take those damn cigarettes from you . . . . I'll make you give them to me."[2] Although Lee did not say anything at that time, he did not disclaim involvement with the McLaughlins or attempt to separate himself from the McLaughlins. Both McLaughlins used profanity toward Nobles and used a racial slur. In her deposition, Nobles testified that all three individuals appeared to be either intoxicated or under the influence of drugs, and that she feared for her safety, because "I didn't know what they were going to do to me," and "[i]t was three against one to my knowledge." She testified that they were sweating and that she could smell alcohol.
There was evidence indicating that Laurie McLaughlin struck the safety glass between her and Nobles with her hands and indicated to Nobles that she would be coming back for cigarettes and that she then turned to Bobby McLaughlin and Lee and stated that she could handle the situation. The record shows that both Bobby *Page 509 
McLaughlin and Lee then left the store, but that Laurie McLaughlin remained in the store and told Nobles that she would come back behind the glass. While this was happening, Bobby McLaughlin, who was outside the building at this time, banged on the glass window next to Nobles and then went to his automobile and reached inside, toward the floorboard. Nobles testified that she saw the butt of a handgun at that time. According to Nobles, Laurie McLaughlin yelled at Bobby McLaughlin to "put that gun down, . . . she's calling the police." Nobles further testified that Laurie McLaughlin told Bobby McLaughlin to back up so that Nobles could not get the license number of the vehicle, and that the three drove off rapidly. Nobles telephoned emergency 911 and informed the dispatcher that three individuals had entered the store and had created a disturbance.
Shortly after the call, City of Mobile police officers arrived, and Nobles told them about the incident. The evidence shows that the three were apprehended by Mobile police officers and brought back to the store and that Nobles identified them as the three who had come into the store and that Nobles cooperated in answering the officers' questions. Officer James Stabler told Nobles that she should remain in the store and that officers would take the suspects out of the car one at a time and ask her if that person was one of the three persons who had created the disturbance in the store. Nobles was instructed to nod if the person taken out of the car was one of the three who had been in the store. Nobles identified all three. The police officers did not ask her any further questions.
The next morning, at the request of police, Nobles delivered the store's surveillance tape to detectives with the Mobile Police Department. They asked her at that time what had happened, and she gave them a narrative statement, which was tape-recorded. Officer Rodgers testified that the only proof he had that Lee had committed a crime was that Lee was "a party to the incident" and he had been with the McLaughlins throughout the disturbance.
The next time Nobles was asked about the incident was when she testified at the preliminary hearing. She was asked what each one of the three individuals had done in the store the night of the disturbance, and when she was asked what Lee had done, she said that he had done nothing. She testified that the reason she telephoned 911 was to ensure that she would be protected by the police that night; she said: "I — my intention wasn't for the police to arrest anybody. I don't know how that operated. I was calling for help and aid for me. Now, whatever they do, I don't know how they do it. I was just calling for help." Based on Nobles's testimony that Lee had done nothing, the district judge dismissed the charges against Lee.
 Standard of Review
In view of the fact that the trial court entered a summary judgment for each defendant, we begin our analysis by first setting out the scope of our review of the lower court's judgment. In Watkins v. Board of Managersof Birmingham Retirement Relief System, 802 So.2d 190, 193 (Ala. 2001), this Court stated:
 "The standard of appellate review applicable to a ruling on a motion for summary judgment is clear:
 "'When reviewing a ruling on a motion for a summary judgment, this Court applies the same standard that the trial court used "in determining whether the evidence before the court made out a genuine issue of material fact." Bussey v. John Deere Co., *Page 510 531 So.2d 860, 862 (Ala. 1988). When a party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).'"
(Quoting City of Orange Beach v. Duggan, 788 So.2d 146, 149 (Ala. 2000).)
 I.
Lee, in his reply brief to this Court, summarizes his argument that the trial court erred in entering the summary judgments:
 "I. The record in this case reflects that Twanda Nobles, while acting within the line and scope of her employment, failed to state all material facts within her knowledge regarding the alleged offense. As such, Lee was entitled to a jury determination on the malicious prosecution claims against Nobles and Minute Stop. See Ritch v. Waldrop, 428 So.2d 1 (Ala. 1982). While Nobles'[s] statement to Detective Williams clearly comes closer to revealing all of the truth than anything prior to that statement, Nobles'[s] own testimony indicated that she never disclosed that Lee did `nothing' until she appeared at the preliminary hearing. Nobles further acknowledged leaving Lee out of discussions with the police (C-933). Therefore, since material facts are in dispute, at least with respect to whether or not Nobles gave a full and fair account of all events transpiring on January 22, 1999, it must be a jury question as to whether Nobles provided police with all information available to her at the time of the incident. Additionally, Twanda Nobles was acting within the line and scope of her employment with Minute Stop, Inc. at all relevant times during this matter. [Lee] presented sufficient evidence in this matter to rebut . . . Twanda Nobles and [Minute Stop's], motions for [a] summary judgment.
 "II. The summary judgment which was granted to the City and the officers was based on the doctrine of immunity, although the actual summary judgment order of May 28, 2002[,] does not specifically so state. It is Lee's argument that the immunity (or the lack thereof) granted or taken in Ex parte Cranman, 792 So.2d 392 (Ala. 2000), does not, under these facts, protect these Municipal Police Officers [or] the City of Mobile. Additionally, in the context of a warrantless arrest, probable cause must be determined prior to the determination of whether immunity exists. Therefore, the trial court erred in granting the City of Mobile and Detective Williams' and Officers Rodgers, Stabler and Walkers Motions for [a] Summary Judgment."
 II.
We first consider whether the trial court erred in entering a summary judgment for Nobles and Minute Stop on Lee's malicious-prosecution, false-arrest, defamation, negligence, and wantonness claims, and for Minute Stop on his claim alleging negligent training and supervision. We think not. In Delchamps, Inc. v. Bryant, 738 So.2d 824 (Ala. 1999), a customer arrested for shoplifting sued the store at which she *Page 511 
was arrested alleging malicious prosecution. This Court stated:
 "We begin with the general rule that a malicious-prosecution action is disfavored in the law. Cutts v. American United Life Ins. Co., 505 So.2d 1211, 1214 (Ala. 1987). We must strike a delicate balance between the competing societal goals of encouraging prosecutions that bring the guilty to justice and discouraging false accusations made without probable cause. Gulsby v. Louisville N.R.R., 167 Ala. 122, 52 So. 392 (1910). See, also, S.S. Kresge Co. v. Ruby, 348 So.2d 484 (Ala. 1977), wherein this Court stated:
 "'"Probable cause" as the term is employed in actions for malicious prosecution, is such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty.'
 "348 So.2d at 488 (quoting with approval Birwood Paper Co. v. Damsky, 285 Ala. 127, 134, 229 So.2d 514, 521
(1969))."
738 So.2d at 832. This Court also has stated:
 "'"One of the reasons for this rule [that malicious-prosecution actions are disfavored] is that public policy requires that all persons shall resort freely to the courts for redress of wrongs and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge. If this were not the case, a large proportion of unsuccessful civil actions would be followed by suits for malicious prosecution, and there would be a piling of litigation on litigation without end."'"
Delchamps, Inc. v. Morgan, 601 So.2d 442, 445 (Ala. 1992) (quotingLiberty Loan Corp. of Gadsden v. Mizell, 410 So.2d 45, 48 (Ala. 1982), quoting in turn Boothby Realty Co. v. Haygood, 269 Ala. 549, 114 So.2d 555
(1959)).
Although the Court in Morgan acknowledged the relevance of the prosecutor's subjective belief as to the guilt of the arrested person, it measured the conduct of the prosecutor in terms of whether there existed "`such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty.'" 601 So.2d at 445 (quoting Birwood Paper Co. v. Damsky, 285 Ala. 127, 134, 229 So.2d 514,521 (1969)). When the facts regarding the existence of probable cause and the absence of malice are not in dispute, of course, the question presented is one of law for the court. Glidden Co. v. Laney, 234 Ala. 475,175 So. 296 (1937); Dodson v. Ford Motor Credit Co., 46 Ala. App. 387,243 So.2d 43 (Ala.Civ.App. 1971). When disputed facts are presented, however, the issue of the existence of probable cause and the absence of malice is not a question of law for the trial court. Schwabacher v.Herring, 35 Ala. App. 496, 500, 48 So.2d 574, 577 (1950).
In Mitchell v. Folmar Associates, LLP, [Ms. 1011572, Jan. 10, 2003] 854 So.2d 1115 (Ala. 2003), this Court stated:
 "In Eidson v. Olin Corp., 527 So.2d 1283, 1284 (Ala. 1988), this Court restated the existing law, as follows:
 "'"Malicious prosecution is an action disfavored in the law." Cutts v. American United Life Insurance Co., 505 So.2d 1211, 1212 (Ala. 1987). The reason for such disfavor is clear: "[P]ublic policy requires that all persons shall resort freely to the courts for redress of wrongs and to enforce their rights, and that this may be done without the peril of a suit for *Page 512 
damages in the event of an unfavorable judgment by jury or judge." Boothby Realty Co. v. Haygood, 269 Ala. 549, 554, 114 So.2d 555, 559 (1959).'"
854 So.2d at 1117. "The elements of malicious prosecution are: (1) a judicial proceeding initiated by the defendant, (2) the lack of probable cause, (3) malice, (4) termination in favor of the plaintiff, and (5) damage." Cutts v. Americn United Life Ins. Co., 505 So.2d 1211, 1214
(Ala. 1987), citing Allen v. Molton, Allen Williams Realty Co.,495 So.2d 27 (Ala. 1986); Johnson v. Haynie, 414 So.2d 946 (Ala. 1982);Brown v. Parnell, 386 So.2d 1137 (Ala. 1980); S.S. Kresge Co. v. Ruby,348 So.2d 484 (Ala. 1977); and Sanders v. Davis, 153 Ala. 375, 44 So. 979
(1907). See also Fina Oil Chem. Co. v. Hood, 621 So.2d 253 (Ala. 1993); Delchamps, Inc. v. Larry, 613 So.2d 1235 (Ala. 1992).
Regarding Lee's malicious-prosecution claims against Nobles and Minute Stop, it appears that the trial court could have determined that Lee did not satisfy at least three of the five elements of such a claim: (1) the existence of a judicial proceeding initiated by the defendant; (2) that there was a lack of probable cause; and (3) that the defendant acted with malice. It is undisputed that Nobles telephoned 911 and reported to the police what happened at approximately 4:30 a.m. on January 22, 1999, at the Minute Stop where she was working. The record does not show that Nobles ever stated that Lee did anything wrong; rather, she identified Lee as being one of the persons who was in the store during the disturbance and answered questions the police officers asked her about the incident. Although she identified Bobby McLaughlin as the person who was holding the gun and as the person who had beaten on the window glass, the record shows, without dispute, that Lee was with the McLaughlins and that he stood by as the McLaughlins threatened Nobles, beat on the "safety" glass separating Nobles from them, and threatened to come behind the glass, and that he was with Bobby when Bobby took his handgun from his vehicle. The record also shows that Lee left in the vehicle with the McLaughlins and that when the police brought the three suspects to the store, the police asked Nobles only whether the suspects were the three persons who had been in the store; she truthfully responded that they were. The record shows that when she was subpoenaed to testify at the preliminary hearing, she had no idea that Lee or the McLaughlins were even in jail, and she truthfully testified that Lee had done nothing on the occasion of the disturbance. The record, however, is clear that he was with the McLaughlins and that he never attempted to intervene or to stop them. Lee, in his deposition, admitted that the police, not Nobles, caused him to be in jail, but that she responded truthfully to the police when she indicated that Lee was with the McLaughlins during the disturbance.
Alabama law protects those who, in good faith, assist law-enforcement officials in identifying persons who may have committed a crime. In CrownCentral Petroleum Corp. v. Williams, 679 So.2d 651, 654 (Ala. 1996), this Court, quoting Wofford Oil Co. v. Stauter, 26 Ala. App. 112, 154 So. 124
(1934), stated:
 "In Wofford Oil Co. v. Stauter, 26 Ala. App. [112] at 114, 154 So. [124] at 126 [(1934)], the Court of Appeals noted the general rule:
 "'If [the defendant's agent] merely reported to the police officers what he had seen and the arrest and imprisonment of plaintiff followed from an investigation subsequently made by the officers, the act complained of would *Page 513 
be the act of the officers and not of [the agent], although [the agent] had furnished the information leading to the investigation and arrest. . . .'"
In Cutts, 505 So.2d at 1215, this Court, quoting Alabama Power Co. v.Neighbors, 402 So.2d 958, 964 (Ala. 1981), quoting in turn Dismukes v.Trivers Clothing Co., 221 Ala. 29, 32, 127 So. 188, 190 (1930), stated:
 "'Giving information of a crime to officers, or a request that the officers investigate a crime is not aiding or abetting or instigating a prosecution, unless such information was a misrepresentation of the facts in order to induce action, or there was a suppression of known material facts.'"
In Cutts, this Court stated that "[m]erely giving or negligently failing to give information to law enforcement officials is not enough" to sustain a malicious-prosecution claim. 505 So.2d at 1215. See alsoPannell v. Reynolds, 655 So.2d 935, 938 (Ala. 1994), where this Court said, "The [Alabama Power Co. v.] Neighbors[, 402 So.2d 958 (Ala. 1981),] rule allows a citizen to fulfill one's civic duty to come forth in good faith with information concerning a suspected crime, without fear of repercussions if the information later leads to a wrongful arrest." The Court, citing Ritch v. Waldrop, 428 So.2d 1 (Ala. 1982), added a caveat, however, stating, "The rule, however, presupposes that the citizen has stated all material facts within his or her knowledge regarding the alleged crime and has not brought about the indictment by fraud, by suppressing facts, or by other misconduct." 655 So.2d at 938. Although the record shows that Nobles did not specifically tell the police that Lee did nothing during the disturbance, it is undisputed that she told police that Lee was in the store with the McLaghlins, that he left the store with them, and that she stated that "I didn't know what they were going to do to me," and "[i]t was three against one to my knowledge."
As concerns Minute Stop, this Court, in Crown Central Petroleum, supra, analogizing liability for false arrest and liability for malicious prosecution, held that if the employee is not guilty of a false arrest, the employer could not be liable either, and the facts of this case are strikingly similar to those presented in Crown Central Petroleum. In that case, this Court determined that the employer was entitled to a judgment as a matter of law.
Lee's sole argument regarding the claims against Nobles and her employer is that "[w]hile Nobles'[s] statement to Detective Williams clearly comes closer to revealing all of the truth than anything prior to that statement, Nobles'[s] own testimony indicated that she never disclosed that Lee did `nothing' until she appeared at the preliminary hearing," and that "Nobles further acknowledged leaving Lee out of discussions with the police." Lee relies heavily on this Court's decision in Ritch v. Waldrop, supra, to support his argument that Nobles failed to make a full and fair disclosure to the police officers who were investigating the incident. The facts of this case show that Nobles did not instigate the criminal proceeding, but merely reported the incident to the police and answered the questions asked by the police officers who investigated the incident. Consequently, we are of the opinion that the rule of law stated in Neighbors, supra, is applicable. In that case, this Court said that where
 "a defendant merely gives the district attorney's office information regarding an alleged crime, leaving the decision to prosecute entirely to the uncontrolled discretion of the district attorney, who thereafter makes his own independent investigation and thereupon takes the information before the grand jury which *Page 514 
returns indictments against the suspects, the defendant, in a malicious prosecution action, is not regarded as having instigated the criminal proceeding."
402 So.2d at 962.
Based on the foregoing, we hold that the trial court did not err in entering a summary judgment for Nobles and her employer, Minute Stop, on Lee's malicious-prosecution claims. Because we hold that there was probable cause to detain Lee, the trial court did not err in entering a summary judgment on Lee's claims of false arrest,[3] defamation, negligence, and wantonness, and Lee's claim alleging that Minute Stop failed to adequately train and supervise Nobles in the proper reporting and handling of an alleged criminal offense, or in the proper identification of persons alleged to be responsible for an alleged crime. Lee recognizes that, under the facts of this case, a lack of probable cause is a necessary factor of these claims.[4]
 III.
We now address whether the trial court erred in entering a summary judgment in favor of the City of Mobile and its police officers.[5] As we have pointed out, Lee argues that the trial court erred in entering a summary judgment for the City of Mobile and the police officers on the basis of discretionary-function immunity. Lee argues that "the immunity (or the lack thereof) granted or taken in Ex parte Cranman, 792 So.2d 392
(Ala. 2000), does not, under these facts, protect these Municipal Police Officers." (Lee's brief, p. 28.) Lee's argument that the immunity discussed in Cranman does not protect the municipal police officers is correct. Cranman applies to State-agent immunity, not to the immunity granted to police officers by § 6-5-338, Ala. Code 1975, but, assuming without deciding that the Cranman principles applied, we believe that the municipal police officers would be immune under the facts of this case.
This Court most recently examined the question of tort liability of a city and its police officers, in great detail, in City of Birmingham v.Sutherland, 834 So.2d 755, 758-59 (Ala. 2002):
 "The City first argues that § 6-5-338, Ala. Code 1975, provides it immunity for what, it says, was Officer Wooten's exercise of a discretionary function in arresting Sutherland. Section 6-5-338 states, in pertinent part:
 "'(a) Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution *Page 515 
or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.
 "'(b) This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers. No immunity is extended hereby to any private non-governmental person or entity, including any private employer of a peace officer during that officer's off-duty hours.'
 "(Emphasis added [in Sutherland].) This Court has stated that `subsection (b) makes it clear that this immunity is extended to "governmental units or agencies authorized to appoint [law-enforcement] officers."' Telfare v. City of Huntsville, 841 So.2d 1222, 1227 (Ala. 2002).
"In Telfare, supra, this Court further observed:
 "'In Ex parte City of Gadsden, 781 So.2d 936 (Ala. 2000), we squarely addressed the issue of a municipality's liability for a police officer's conduct. In Ex parte City of Gadsden we stated: "[W]e must first determine whether [the officer] was engaged in performing a discretionary function." 781 So.2d at 938. Discretionary functions are those as to which "there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice involving what is just and proper under the circumstances." Wright v. Wynn, 682 So.2d 1, 2 (Ala. 1996). Generally, arrests and attempted arrests are classified as discretionary functions.
 "'"A State agent shall be immune from civil liability in his or her capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"'". . . .
 "'"(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons . . . ."
 "'Ex parte Cranman, 792 So.2d 392, 405 (Ala. 2000) (second emphasis added in [Sutherland]).'
 "841 So.2d at 1228. `This Court has also held, however, that acts taken in bad faith, or willful or malicious conduct, will not be considered discretionary in nature.' Ex parte City of Montgomery, 758 So.2d 565, 569 (Ala. 1999) (citing Couch v. City of Sheffield, 708 So.2d 144, 153 (Ala. 1998); see Wright v. Wynn, 682 So.2d 1 (Ala. 1996); Barnes v. Dale, 530 So.2d 770 (Ala. 1988); DeStafney v. University of Alabama, 413 So.2d 391 (Ala. 1981))."
In Sutherland, this Court stated that the Court of Criminal Appeals, inOwen v. State, 418 So.2d 214 (Ala.Crim.App. 1982), had equated the term "probable cause" *Page 516 
with "reasonable cause," as that latter term is used in § 15-10-3, Ala. Code 1975, and this Court, quoting Owen, held that probable cause, as defined in Draper v. United States, 358 U.S. 307, 313
(1959), was as follows:
 "'"'Probable cause exists where "the facts and circumstances within their (the arresting officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been committed. . . .' (Citations omitted)."'"
834 So.2d at 761. In Sutherland, the Court, again quoting Owen, further stated:
 "'"In determining whether there is probable cause to arrest, it is not necessary that the officer have before him evidence that would support a conviction for the offense. He need only have facts and circumstances within his knowledge which are reasonably trustworthy and which would lead a prudent man to believe that the accused committed or was committing an offense."'
 "418 So.2d at 220 (quoting Tice v. State, 386 So.2d 1180, 1183 (Ala.Crim.App. 1980)). See also Ex parte City of Montgomery, 758 So.2d at 570."
834 So.2d at 761.
We believe that the facts of this case show that there was probable cause to arrest and detain Lee. Lee's basic argument is that Nobles failed to make a full and fair disclosure to the police officers investigating the incident of the fact that Lee did nothing in the store, as she testified at the preliminary hearing. Because he did nothing during the disturbance, Lee argues, the police officers lacked probable cause to arrest him without a warrant, and this lack of probable cause removed Lee's arrest from "the category of actions which are considered discretionary" and therefore protected. (Lee's brief, p. 61.) On this point, the record shows that the police asked Nobles general questions regarding what happened in the store and that she told the investigating officers that three persons had come into the store and she described what had happened, and based upon what she told the police officers, Lee and the McLaughlins were apprehended and brought back to the Minute Stop, where Nobles identified them. The record clearly shows that Lee arrived at the Minute Stop with the McLaughlins, and that, at best, he watched passively as the McLaughlins threatened Nobles, banged on the safety glass separating Nobles from them, and threatened to come behind the glass, and as Bobby McLaughlin drew a handgun. Furthermore, Lee then left with the McLaughlins.
Lee relies heavily on this Court's case of Telfare v. City ofHuntsville, 841 So.2d 1222 (Ala. 2002), to support his position that the police officers are liable for his alleged damage. We do not believe that the facts of the present case are sufficiently similar to the facts inTelfare so that the holding in that case dictates the result in this case. In that case, the Court concluded that the rules governing an officer's power to arrest provided no discretion for an officer to make a warrantless arrest for a misdemeanor not committed in the officer's presence. In our opinion, the facts in this case are more similar to those in Sutherland.
Because the police officers had probable cause to arrest and detain Lee, the act of arresting Lee for a felony without a warrant was discretionary, and the officers were protected under § 6-5-338, Ala. Code 1975; consequently, the trial court did not err in entering a summary judgment on each of Lee's claims filed against the City *Page 517 
of Mobile and officers Rodgers, Walker, Stabler, and Williams.
 IV.
Based on the foregoing, the judgment of the trial court is affirmed.
This opinion was prepared by Retired Justice Hugh Maddox, sitting as a Justice of this Court pursuant to § 12-18-10(e), Ala. Code 1975.
AFFIRMED.
MOORE, C.J., and SEE, BROWN, HARWOOD, and STUART, JJ., concur.
[1] On June 6, 2003, a suggestion of death was filed with this Court on behalf of David Walker.
[2] Nobles testified that Bobby McLaughlin said: "Give my wife them damn cigarettes, give her the cigarettes right now, we'll make you give us the cigarettes." Bobby McLaughlin also apparently intentionally knocked over a candy display on the counter.
[3] Section 15-10-3(a)(3), Ala. Code 1975, provides that an officer may arrest a person without a warrant "[w]hen a felony has been committed and the officer has reasonable cause to believe that the person arrested committed the felony."
[4] As to the negligence count against Nobles and Minute Stop, Lee argues that "Nobles and Minute Stop obviously had a duty not to falsely arrest Lee or any other patron of the store." (Lee's brief, p. 50.) He further argues that Nobles "had a duty to fully disclose the activities of all Defendants in the store, and the failure to do so, even if not specifically asked, constitutes a breach of duty on the part of Nobles and vicariously on the part of Minute Stop." (Lee's brief, p. 51.) "With regard to the wantonness counts the same duty owed in the negligence counts is applicable." (Lee's brief, p. 53.) We cannot accept his arguments.
[5] Lee and the City of Mobile agreed to the dismissal of the malicious-prosecution count against the City of Mobile.