[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14925
Non-Argument Calendar
_____

D.C. Docket No. 2:17-cv-00805-ALB-SMD

BRANDON LEE WILLIAMS,

Plaintiff-Appellant,

versus

THE CITY OF MONTGOMERY,
DAVID E. SHIRAH,
in his individual capacity as police officer
employed with The City of Montgomery & its
police department,
MATTHEW D. GEIER,
in his individual capacity as police officer
employed with The City of Montgomery & its
police department,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(December 21, 2020)

Before WILLIAM PRYOR, Chief Judge, JORDAN and GRANT, Circuit Judges.

PER CURIAM:

Brandon Williams appeals the summary judgment in favor of Officer David Shirah and Sergeant Matthew Geier of the Montgomery Police Department. 42 U.S.C. § 1983. Shirah and Geier arrested Williams after mistaking him for his younger brother who had five outstanding warrants for his arrest. Shirah charged Williams with harassment, but the City of Montgomery later dismissed the charge. Williams complained of a false arrest and the use of excessive force in violation of the Fourth Amendment, U.S. Const. amend. IV, and of false imprisonment, assault and battery, and malicious prosecution under Alabama law. The district court dismissed Williams's claims under federal law based on qualified immunity and his claims under state law based on discretionary-function immunity. Williams also alleged municipal liability but has abandoned any challenge to the summary judgment in favor of the City. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). We affirm the summary judgment against Williams's claims under federal law and his claims of false imprisonment and of assault and battery under state law. But we vacate the summary judgment against Williams's claim of malicious prosecution under state law because material disputes of fact exist about whether the officers lacked probable cause and acted in bad faith when they charged Williams with harassment, and we remand for further proceedings.

2

## I. BACKGROUND

On review of a summary judgment, we view the evidence in the light most favorable to the nonmovant, *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009), "to the extent supportable by the record," *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007). The record includes a three-minute video of Williams's arrest recorded by Shirah's body camera. We must view "the facts in the light depicted by the" recording and may not adopt a version of the facts that is "utterly discredited" by the recording. *Id.* at 380–81. "But where the recording does not clearly depict an event or action, and there is evidence going both ways on it," we credit Williams's account of the incident. *Shaw v. City of Selma*, 884 F.3d 1093, 1097 n.1 (11th Cir. 2018).

At the request of the Montgomery School Enforcement Bureau, Officer Shirah, Sergeant Geier, and Officer Blake Hicks drove to 6812 Briar Gate Court to arrest a student, Braxton Williams, on five felony warrants outstanding in another jurisdiction. Hicks and Geier walked to the house and spoke to a woman who identified herself as Braxton's cousin. Shirah activated his body camera and stood at the front corner of the house where he could see the side yard and his fellow officers standing in front of a glass storm door with iron bars that was ajar.

A young man came to the door to talk to Hicks and Geier. The man resembled Braxton Williams, whose photograph the officers had viewed earlier.

The officers asked Williams to identify himself, and he responded that his name was Brandon. While talking to Williams, one of the officers further opened the door.

When Williams told the officers a second time that his name was Brandon, they grabbed his arm, which was visible through the storm door, and pulled him outside the house. Shirah observed the officers' movement and ran to assist them. A 30-second struggle ensued during which the officers pushed Williams against the outside of the house and then to the ground. Williams yelled "help" and "no" while being instructed to "put your hands behind your back" and to "give [us] your hands." Williams insisted that he was innocent, as he was Brandon Williams, Braxton's brother, and was 18 years old. When Williams returned to his feet, a small amount of blood was visible on his left eyebrow. Williams yelled "help" as the officers escorted him to a patrol car, and an officer warned him that, if he fought them, they would "chain his ass to that g*d*mn pole right there."

Williams offered both his own affidavit and that of his cousin, Kimberly Williams, who first answered the door and witnessed the events. Kimberly stated in her affidavit that "Brandon's demeanor in his encounter with the police was calm and without any acts of aggression towards them…He was polite and mild mannered…I did not observe Brandon to have engaged in any criminal conduct towards the police officers." In his affidavit, Williams stated, "My demeanor in

4

this encounter with the police was calm and without any acts of aggression towards them. I answered their questions truthfully about my identity and was polite and mild mannered in accordance with my personality."

The officers transported Williams to the police station. Within a few hours of Williams's arrival, officers in the Criminal Investigation Division identified him as Braxton's brother. In his affidavit, Mr. Williams stated that he overheard the officers state that they "had made a mistake and now they had to find something to charge [Brandon] with." Shirah filed a complaint against Williams for harassment, and Williams was released on bond. Later, the City *nol prossed* the complaint.

## II. STANDARD OF REVIEW

We review a summary judgment *de novo*. *Eslinger*, 555 F.3d at 1324–25. Summary judgment is appropriate when no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). For a material dispute of fact to exist, there must be "sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

## III. DISCUSSION

Williams challenges the summary judgment against his claims against the officers. Williams argues that officers Geier and Shirah are not entitled to qualified immunity from his federal claims because they "conducted no investigation to

ensure they were arresting the correct person" and because their use of force was excessive. Williams also argues that the officers are not immune from liability against his claims of false arrest, assault and battery, and malicious prosecution under state law.

### A. Geier and Shirah Are Entitled to Qualified Immunity from Williams's Federal Claims of False Imprisonment and Excessive Force.

Officers enjoy qualified immunity from civil damages for their discretionary acts so long as their "conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Rodriguez v. Farrell*, 280 F.3d 1341, 1345 (11th Cir. 2002) (internal quotation marks omitted). To receive qualified immunity, officers must "prove that [they were] acting within the scope of [their] discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)). Because Williams does not dispute that Geier and Shirah were acting within their discretionary authority when executing valid arrest warrants, he must "show that qualified immunity is not appropriate." *Id.*

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotation marks omitted). So if officers make a "reasonable

6

mistake in the legitimate performance of [their] duties [they] ought to be protected by qualified immunity." *Washington v. Rivera*, 939 F.3d 1239, 1249 (11th Cir. 2019) (internal quotation marks omitted). They enjoy immunity from suit whether the "error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).

We judge the reasonableness of officers' actions objectively. *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). We assess Geier and Shirah's actions from the perspective of how a reasonable officer on the scene would conduct himself in the same circumstance. *Id.*; *Graham*, 490 U.S. at 396. We cannot "second-guess" the officers' actions using the benefit of "20/20 hindsight vision." *Penley v. Eslinger*, 605 F.3d 843, 854 (11th Cir. 2010).

### 1. The Officers Enjoy Qualified Immunity from Williams's Complaint of False Arrest.

The Fourth Amendment protects citizens from unreasonable seizures. U.S. Const. amend. IV. "[A]n officer ordinarily does not violate the Fourth Amendment when he executes a facially valid arrest warrant . . . ." *Williams v. Aguirre*, 965 F.3d 1147, 1162 (11th Cir. 2020). So "when the police have probable cause to arrest one party [based on a valid warrant], and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest."

7

*Hill v. California*, 401 U.S. 797, 802 (1971). An arrest based on a reasonable mistake in identity does not violate the Fourth Amendment. *Rodriguez*, 280 F.3d at 1346–48.

The "reasonable mistake" standard originated in *Hill v. California*, 401 U.S. 797 (1971), where the Supreme Court concluded that arresting a man named Miller in the mistaken belief that he was Hill—who the police had probable cause to arrest—did not violate the Constitution. *Id.* at 802–05. The Supreme Court stated that the "mistake was understandable and the arrest [was] reasonable" because Miller fit Hill's description, the officers discovered Miller inside Hill's home, and Miller's "explanation for his mode of entry [into Hill's apartment] was not convincing." *Id.* at 802–03. The Court determined that the officers had a "reasonable, good faith belief that Miller was in fact Hill" even though Miller maintained his innocence and produced forms of identification. *Id.* at 799, 802–04.

Based on *Hill*, we concluded in *Rodriguez* that officers "committed no constitutional violation" when they arrested Victor Heredia during a nighttime traffic stop for a warrant issued for Joe Rodriguez. 280 F.3d at 1345–49. Heredia used Rodriguez's name as an alias. *Id.* at 1344. We explained that the failure to notice "small differences" in the men's appearances did not make the mistaken identity unreasonable because the officers had to make a prompt determination while "in the field and not in a police station." *Id.* at 1348.

8

Like the officers in *Rodriguez* and *Hill*, Geier and Shirah reasonably but mistakenly identified Williams as his brother, Braxton. On arrival at Braxton's home, the officers met a woman who identified herself as Braxton's cousin. She sent Williams to the door, and he resembled Braxton. Although Williams identified himself as Brandon, "aliases and false identifications are not uncommon," *Hill*, 401 U.S. at 803, and because the officers were unaware that Braxton had a brother, they reasonably treated Williams's assertions that he had a different name as an effort to evade arrest. Officers "executing an arrest warrant . . . [are not] required . . . to investigate independently every claim of innocence, [even when] the claim is based on mistaken identity," *Baker v. McCollan*, 443 U.S. 137, 145–46 (1979), and the information available to Geier and Shirah supported a "reasonable, good faith belief" that Williams was Braxton, *Hill*, 401 U.S. at 802. Because the officers reasonably mistook Williams for his brother, they were immune from Williams's complaint of a false arrest.

Williams argues, for the first time, that Geier and Shirah violated his right to an unreasonable seizure by detaining him on a charge of harassment without probable cause after they discovered his true identity. But, as a court of review, we do not consider arguments raised for the first time on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (explaining that if we address issues "that districts court never had a chance to examine, we . . . deviate

9

from the essential nature . . . of an appellate court"). It is unsurprising that, in Williams's words, "[t]he district court never addressed [his detention] issue" because it was not alleged in his complaint. Williams complained that the officers "violated [his] rights under the Fourth Amendment of the United States Constitution, to be secure and protected from unreasonable warrantless searches and seizures," when they "arrested him without probable cause and beyond their legal authority because they believe[d] that he was Braxton Williams, notwithstanding his having told them that he was Brandon Williams."  Because Williams raises "an entirely new theory on appeal, we are unable to reach the merits of that new theory." *Reider v. Philip Morris USA, Inc.*, 793 F.3d 1254, 1258 (11th Cir. 2015).

### 2.  The Officers Enjoy Qualified Immunity from Williams's Complaint of Excessive Force.

The use of excessive force to make an arrest also violates the Fourth Amendment. *Graham*, 490 U.S. at 393–95. "But the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Rodriguez*, 280 F.3d at 1351 (internal quotation marks omitted). So an officer's use of *de minimis* force to make an arrest does not violate the Fourth Amendment. *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000).

10

To determine whether a particular use of force was excessive, we ask whether a reasonable officer would believe that the force applied was necessary in the situation. *Lee*, 284 F.3d at 1197. "[T]he excessive force inquiry [is] completely objective . . . [and] exclud[es] consideration of the officer's intentions." *Id.* at 1198 n.7. In our inquiry, we consider the severity of the arrestee's crime and his efforts to resist arrest. *Id.* at 1197–98. We also consider the need for use of force, the relationship between that need and the amount of force applied, the extent of the injury inflicted, and whether the force was applied in good faith or gratuitously. *Slicker v. Jackson*, 215 F.3d 1225, 1232–33 (11th Cir. 2000).

Geier and Shirah used minimal force to arrest Williams. The officers confronted a man wanted on five felony charges who they thought attempted to deceive them about his identity. The officers responded reasonably by seizing Williams before he could retreat into his home and possibly arm himself. When Williams resisted arrest and refused to comply with the officers' orders, the officers followed standard procedures by forcing Williams to the ground and using their body weight to restrict his movements until they could apply handcuffs. We have approved of officers using similar force in situations that were less perilous. *See Nolin*, 207 F.3d at 1255; *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559–60 (11th Cir. 1993).

Williams averred that the officers "chok[ed] him even as [he] told them that [he] could not breathe" and that "one of the officers kneed me in the head . . . as I was being placed in the police vehicle for transport," but qualified immunity applies to these uses of force as well. "[Q]ualified immunity applies unless application of the standard would inevitably lead every reasonable officer in [Geier and Shirah's] position to conclude the force was unlawful." *Id.* at 1559. Even when "no further force [is] needed," its use is "not plainly unlawful" when the minor nature of an injury reflects that the officers used a minimal amount of force. *See Nolin*, 207 F.3d at 1256–58 (evaluating use of unnecessary force based on "the amount of force used and the injury inflicted"). In *Nolin*, we reversed the denial of qualified immunity to an officer who "grabbed [the plaintiff] from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him," when the force used was unnecessary but caused only bruising that "disappeared quickly." *Id.* at 1255, 1257. We concluded the force in *Nolin* was *de minimis* based on *Post*, in which an officer "arrested the plaintiff for a building code violation, pushed [him] against a wall and applied a choke-hold before . . . [applying] handcuffs—all despite the fact that the plaintiff did not resist." *Id.* at 1256. As in *Nolin* and *Post*, the minor force used

12

against and injury sustained by Williams was *de minimis* and does not defeat Geier

and Shirah's immunity from suit.

*B. The District Court Did Not Err By Granting Geier and Shirah Summary Judgment Against Williams's State-Law Claims of False Imprisonment and of Assault and Battery, But It Erred By Granting Summary Judgment Against Williams's Claim of Malicious Prosecution.*

Police officers in Alabama are entitled to "immunity from tort liability

arising out of [their] conduct in performance of any discretionary function within

the line and scope of his or her law enforcement duties." Ala. Code § 6-5-338(a).

State-function immunity applies to "[d]iscretionary acts[, which] are those acts as

to which there is no hard and fast rule as to the course of conduct that one must or

must not take and those acts requiring exercise in judgment and choice and

involving what is just and proper under the circumstances." *Sheth v. Webster*, 145

F.3d 1231, 1239 (11th Cir. 1998) (internal quotation marks omitted). Because

Williams does not dispute that Geier and Shirah performed discretionary acts by

detaining him and charging him with harassment, he must present substantial

evidence that they "acted in bad faith, with malice or willfulness in order to deny

them immunity." *Id.*

1. Geier and Shirah Enjoy Discretionary-Function Immunity from Williams's Complaints of False Imprisonment and of Assault and Battery.

Geier and Shirah are immune from liability for Williams's complaints of

false imprisonment and of assault and battery. Under Alabama law, "[f]alse

13

imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code § 6–5–170. Because Geier and Shirah arrested and detained Williams in the reasonable but mistaken belief that he was the subject of valid arrest warrants, the officers are "protected under the doctrine of discretionary function immunity from any liability for [their] mistake in identification." *Wright v. Wynn*, 682 So. 2d 1, 2 (Ala. 1996). And Williams presented no substantial evidence that the officers committed an assault and battery by using force that was excessive to arrest him. *See Walker v. City of Huntsville*, 62 So. 3d 464 (Ala. 2010). In Alabama, peace officers enjoy immunity for their actions when "exercising judgment in the enforcement of the criminal laws of the State, including . . . arresting or attempting to arrest persons." *City of Birmingham v. Sutherland*, 834 So. 2d 755, 759 (Ala. 2002) (quoting *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)). The officers reasonably determined that it was necessary to apply force to overcome Williams's resistance to being handcuffed and to place him in a patrol vehicle.

### 2. Discretionary-Function Immunity Does Not Shield the Officers from Liability for Malicious Prosecution Due to Issues of Material Fact About Whether They Lacked Probable Cause and Acted with Malice.

To prove that he was a victim of malicious prosecution, Williams had to prove that the officers commenced a prosecution against Williams without probable cause and in bad faith, that the prosecution terminated in his favor, and

14

that he suffered damages. *See Delchamps, Inc. v. Bryant*, 738 So.2d 824, 831–33 (Ala. 1999). No dispute exists that the officers charged Williams with harassment, that the proceeding terminated in Williams's favor, and that he incurred expenses to make bond and to defend himself against the charge. The only remaining issues are whether the officers lacked probable cause and acted in bad faith.

To determine whether the officers had probable cause, "[t]he question is not whether [Williams] was guilty of the thing charged, but whether [the officers] acted in good faith on the appearance of things." *Eidson v. Olin Corp.*, 527 So. 2d 1283, 1285 (Ala. 1988) (internal quotation marks omitted). Immunity "is withheld if an officer acts with willful or malicious intent or in bad faith." *Borders v. City of Huntsville*, 875 So. 2d 1168, 1178 (Ala. 2003). Malice can "be inferred from want of probable cause" and "from circumstances surrounding and attending prosecution." *Ravenel v. Burnett*, 5 So. 3d 592, 600 (Ala. Civ. App. 2008) (quoting *Thompson v. Harris*, 603 So.2d 1086, 1088–89 (Ala. Civ. App. 1992)).

The record reveals genuine issues of material fact about whether the officers had probable cause to charge Williams with harassment. In Alabama, "a person commits the crime of harassment, if with intent to harass, annoy, or alarm another person, he . . . [s]trikes, shoves, kicks, or otherwise touches a person or subjects him or her to physical contact." Ala. Code § 13A-11-8(a)(1)(a). Williams and his cousin averred that his "demeanor in his encounter with the police was calm and

15

without any acts of aggression towards them" and that he "was polite and mild mannered." Shirah, in contrast, accused Williams of "push[ing] [Shirah] back" and darting back inside his house to "grab an unknown object that was by the washing machine." And the video footage from Shirah's body camera does not resolve the issue. A genuine dispute exists about whether Williams unlawfully touched any of the officers.

A genuine issue of material fact also exists about whether the officers acted in bad faith when they charged Williams with harassment. The want of probable cause is evidence of malice. And Williams averred that he heard the officers state that they "had made a mistake and now they had to find something to charge him with." A jury could reasonably infer from that statement that the officers fabricated the charge of harassment.

## IV. CONCLUSION

We **AFFIRM** the summary judgment against Williams's federal claims of false arrest and excessive force and his state claims of false imprisonment and assault and battery. But we **VACATE** the summary judgment against Williams's state claim of malicious prosecution and **REMAND** for further proceedings.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

16